IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TAMAR SHIRINIAN, | ) |
| | ) |
|    *Plaintiff*, | )    Civil Action No. 3:25-cv-528 |
| | ) |
| v. | ) |
| | ) |
| | )    Judge Crytzer |
| | )    Magistrate Judge McCook |
| DONDE PLOWMAN, et al., | ) |
| | )    JURY DEMAND |
| | ) |
|    *Defendants.* | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR RECONSIDERATION**

The Court's classification of Plaintiff's speech as not involving the highest rung of First Amendment protection (See Court's Order, Docket Entry No. 26, "Plaintiff's speech...falls outside of the First Amendment's core because it is not political speech") is inconsistent with binding Supreme Court precedent. Simply put, as a matter of First Amendment doctrine, speech does not have to be political or involve politics to be placed in the highest rung of Constitutionally protected speech. Among other things, speech can sit at the highest rung of protection if it contributes to public discourse, challenges orthodoxies, expresses a moral judgment, or provokes debate on matters society is grappling with in real time. Plaintiff's speech did many of these things whether viewed or not viewed by the Court as "political" speech.[1]

Defendants completely ignore the numerous binding Supreme Court cases cited by the Plaintiff and focus only on *Bennett v. Metro. Gov't of Nashville*, 977 F.3d 530 (6th Cir. 2020) and

---

[1] Contrary to Defendants' claim, Plaintiff is not simply rehashing initial issues. Also, contrary to Defendants' position, Plaintiff did not begin by focusing on new evidence coming to light.

an unpublished case, *Marquardt v. Carlton*, No. 21-3832, 2023 WL 395027 (6th Cir. Jan. 23, 2023). However, *Bennett* involved an employee who dealt with calls from the general public on a daily basis while working at an Emergency Communications Center, while *Marquardt* involved an employee who worked in Emergency Medical Services. Moreover, in *Bennett*, the Court specifically found that the issue was "whether a public employee's ***use of a racial slur*** when discussing politics on Facebook is sufficiently protected by the First Amendment to outweigh a government agency's interest in having an efficient workplace and effective serving public." See id. at 530 (emphasis added). In the case at hand, so such slur exists.

Moreover, *Bennett* and *Marquardt* revolved around individuals whose main job involved significant daily interactions with members of the general public. That is not the case here. As evidenced by Dr. Shirinian's Declaration provided in support of her Motion for a Temporary Restraining Order (Exhibit 1 to Docket Entry No. 11), an ***overwhelming majority*** of the time she spent as a professor was quite secluded and involved reading, researching, drafting scholarly articles and preparing for class. She also spent time teaching two upper-level courses, not the general public.

Not only are the facts in this matter completely different from those in *Bennett* and *Marquardt*, but Plaintiff respectfully contends that *Bennett* does not stand for the proposition that, when determining the degree of protection speech warrants, speech *must* engage with politics or political messages. As the numerous Supreme Court cases cited (and the Sixth Circuit case of *Bennett*) hold, the question is not simply "political or not" but the level of importance the speech has in the community/the "public concern" question. See *Connick v. Myers*, 461 U.S. 138, 145 (2011) ("[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values' and is entitled to special protection"). The highest rung of protected speech can include

moral viewpoints (ex. "the world is better off without _____, be it Osama bin Laden, Charlie Kirk, or Rob Reiner") no matter how offensive or immoral it may be to some, as the First Amendment forbids the government from prescribing what citizens must think, believe, or say---including moral, political, or ideological viewpoints. The state's role is neutrality, not moral supervision, and a government actor may not punish speech because it reflects the "wrong" values.

Finally, as the very-well educated Defendants in this matter did hundreds of times in answering Plaintiff's Amended Complaint, they amazingly claim in their Response that they all "lack sufficient knowledge to confirm or deny" readily available, important published facts---here, about the State of Tennessee's involvement with Turning Point USA.[2] As Defendants in their official capacities represent the State of Tennessee, such information should be readily available to them if they did not believe what was published in the newspaper cites provided to them. Instead, Defendants contend that Turning Point USA is only one of the 555 registered student organizations on UTK's campus and that many of those organizations have viewpoints across the political spectrum. Of course, simply having a club or organization on a college campus is extremely different than the State of Tennessee, through statements from politicians, announcing that the State is teaming up with a conservative organization started by conservative political activist Charlie Kirk to advocate for conservative politics and viewpoints by bringing the club to every high school and college in the State as "Club America." The State of Tennessee is openly and explicitly endorsing the very political viewpoints of Mr. Kirk and TPUSA that Plaintiff, as a citizen, spoke out against.

---

[2] Notably, multiple relevant publications were *provided to the Defendants* via citations in Plaintiff's Motion (Doc. 35). While Defendants can dispute the truth or information in articles provided to them, it is difficult for Plaintiff to understand how Defendants "lack sufficient knowledge to confirm or deny" the facts cited in the articles provided to Defendants. Plaintiff suggests said "lack of knowledge" is not actually about "lacking knowledge" but trying to control the record.

This Court must overturn its prior decision and grant Plaintiff's motion.

Respectfully Submitted,

/s/ Robert C. Bigelow, Esq.
Robert C. Bigelow, Esq. #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
(615) 829-8986

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2025, a copy of the foregoing will be sent via the Court's CM/ECF system to all counsel listed below:

Michael D. Fitzgerald, Esq.
T. Mitchell Panter, Esq.
The University of Tennessee
400 W. Summit Dr. – UT Tower #1117
Knoxville, TN 37902
(865) 974-0525
Attorneys for Defendants

/s/ Robert C. Bigelow, Esq.