UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TAMAR SHIRINIAN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 3:25-cv-528-KAC-JEM |
| | ) JURY DEMANDED |
| THE UNIVERSITY OF TENNESSEE | ) |
| KNOXVILLE, DONDE PLOWMAN, | ) |
| RANDY BOYD, and CHARLES NOBLE, | ) |
| in their personal and official capacities, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
### FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendants Donde Plowman, Randy Boyd, and Charles Noble, individually and in their official capacities (collectively, the "Defendants"), through the Office of the General Counsel for the University of Tennessee, respond in opposition to Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 51] as follows:

### INTRODUCTION

It is undisputed that Donde Plowman, Chancellor of the University of Tennessee, Knoxville, alone made the final decision with respect to Plaintiff's employment. Chancellor Plowman made the decision to place Plaintiff on administrative leave and to initiate the termination process, and she has made all decisions with respect to the process Plaintiff has received. Nonetheless, despite no support within the record as developed so far, Plaintiff seeks to add **twenty** additional individual defendants to this lawsuit, including the entire University Board of Trustees

and the University's General Counsel, among other possible defendants, with claims that have no basis in the law.

Plaintiff's proposed second amended complaint ["Proposed Complaint"] purports to impose section 1983 liability upon every person upstream and downstream from Chancellor Plowman with knowledge of her plan to place Plaintiff on leave or terminate Plaintiff, on the theory that every person involved "knowingly ratified, prolonged, enabled, and affirmatively chose not to intervene" in Plowman's decisions. [Doc. 51-1 ¶ 4; *see also* ¶¶ 56, 59 (defendants chose "not to intervene, correct, or halt" Plowman's actions)]. Thus, Plaintiff's claims against the twenty new putative defendants rely solely on their failure to act.[1] Additionally, Plaintiff moves for leave to amend her complaint to add a claim for violation of her procedural due process rights. [Doc. 51-1, ¶¶ 102-08].

While it is inarguable that motions to amend are freely granted under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint may be denied where it is futile, because the amendment cannot withstand review under the standards of a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Billiards & Brews, LLC v. City of Knoxville*, No. 3:23-cv-181, 2025 WL 2495773, at *3, 4 (E.D. Tenn. Aug. 29, 2025). Here, her attempt to add defendants and a new due process claim would not survive a Rule 12 motion; therefore, her motion to amend is futile and should be denied.

---

[1] For purposes of this motion, Defendants will group the new putative defendants into two groups: (1) the "Board," consisting of the Board of Trustees, including John Compton, Board Chair, and Cindy Moore, Secretary of the Board; and (2) the "Advisory Group," consisting of subordinate members of the staffs of Chancellor Plowman and President Boyd, who merely handled communications or advised Chancellor Plowman in making her decision, the University's General Counsel, and the Board's Special Counsel.

2

## I. THE MEMBERS OF THE BOARD TOOK NO ACTION IN THIS CASE THAT WOULD IMPUTE INDIVIDUAL LIABILITY TO ANY OF THEM UNDER § 1983.

Plaintiff seeks to add the entire Board of Trustees[2] as defendants in their individual capacities. Plaintiff does not allege that any member of the Board of Trustees ever communicated with Chancellor Plowman at all about Plaintiff or Plaintiff's employment. She alleges only that President Boyd emailed some general information to members of the Board three hours prior to Chancellor Plowman placing Plaintiff on leave on September 15, 2025, and that they were generally aware of the situation thereafter. [Doc. 51-1, ¶¶ 37-38, 72-73]. Plaintiff bases her claims against the members of the Board solely on her contention that they had some supervisory responsibility over Chancellor Plowman, took no affirmative action, and through their inaction, breached their duty to stop Chancellor Plowman from allegedly violating Plaintiff's constitutional rights. [Doc. 51-1, ¶¶ 60-62]. Plaintiff is, quite simply, wrong on the law.

First, and contrary to Plaintiff's assertions, no cause of action for money damages exists against the Board members in their individual capacities because they "simply have no individual supervisory responsibilities" and therefore could not be acting under "color of law" for § 1983 purposes. *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 512 (6th Cir. 1996). To hold otherwise would "create the legal fiction that such supervisory responsibility exists solely by virtue of serving as a member of an official body . . . , ignor[ing] the reality that these board members were unable to act, in a legal sense, except as constituent members of a board majority." *Id.* Put another way, Plaintiff's only claim against the Board would be against the body as a whole, not its constituent

---

[2] This group includes John Compton, Board Chair; Cynthia Moore, Secretary of the Board; and board members Brad Box; Hon. Bill Haslam; Andy Holt, Tennessee Commissioner of Agriculture; Decosta Jenkins; Shanea McKinney; Chris Patterson; William C. Rhodes, III; Donnie Smith; David Wade; David Watson; Lang Wiseman; and Jamie Woodson. All board members are appointed to their positions by either the Governor of Tennessee or the speaker of the Tennessee House of Representatives except the Commissioner of Agriculture, who is an *ex officio* voting member, and a student trustee (not named in the Proposed Complaint), who is selected by the Board. *See* Tenn. Code Ann. § 49-9-2022; *see also* bot.tennessee.edu.

members, and even that claim would fail because the Board, as the governing body of a state entity, is not a "person" under § 1983. The Eleventh Amendment to the United States Constitution bars any claim for money damages. *See, e.g., Morgan v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023).

Second, even if the individual Board members held individual supervisory authority over University employees, which Plaintiff does not allege, Plaintiff's proposed claims nevertheless fail because in the Sixth Circuit, government officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates on a theory of *respondeat superior. Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2007) (discussing the rule in the context of a *Bivens* action). Rather, to prevail against a supervisory official under § 1983, a plaintiff must show that the supervisor actively participated in, or "encouraged or condoned," the unconstitutional actions of a subordinate; inaction is not enough. *Bass*, 167 F.3d at 1048; *see Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (reversing ruling that knowledge constituted acquiescence: mere awareness of subordinate's unconstitutional actions and failure to act without active participation or authorization is insufficient to constitute "acquiescence"). "[M]ere awareness of a violation and failure to remedy it is not equivalent to 'approv[ing] or knowingly acquies[ing] in unconstitutional conduct.'" *King v. Zamiara*, No. 4:02-cv-141, 2009 WL 1067317, at *2 (W.D. Mich. Apr. 21, 2009) (quoting *Shehee*, 199 F.3d at 300); *Lowe v. Prison Health Svc.*, No. 13-10058, 2014 WL 584944, at *6 (E.D. Mich. Feb. 14, 2014) ("Supervisors are not liable under § 1983 merely because they are aware of an alleged violation and fail to act – this holds even if the omission is the "failure [to] remedy the ongoing effects of a constitutional violation.") (citations omitted); *see also Frodge v. City of Newport*, No. CV 09-59-WOB, 2010 WL 11530630, at *10 (E.D. Ky. Dec. 29, 2010), subsequently *aff'd*, 501 F. App'x 519

4

(6th Cir. 2012) ("Ratification does not trigger supervisory liability unless a plaintiff can point to specific actions by the supervisor that independently violated plaintiff's constitutional rights.").

Stated differently, government officials may be individually liable under § 1983 for a failure to supervise only if they "encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982); *see also Bass*, 167 F.3d at 1048 (explaining that supervisory liability "cannot attach where the allegation of liability is based upon a mere failure to act[,]" . . . but rather, "must be based upon *active unconstitutional behavior*") (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (emphasis supplied)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874; *see also Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) ("We have held that, even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'") (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (no supervisory liability where supervisor was not "personally involved" in alleged unconstitutional actions or that he "encouraged or condoned others to act illegally").

The members of the Board did nothing that would satisfy this standard, and Plaintiff's Proposed Complaint does not contain any allegation that would support a claim against any member of the Board. At some point on either Sunday, September 14, 2025, or early on Monday, September 15, 2025, President Boyd called John Compton, the Chairman of the Board, to inform him that the Chancellor had decided to take action against Plaintiff and that the decision might receive publicity. Chair Compton made no move to interfere with the Chancellor's decision, as he

5

considered it a campus matter within the Chancellor's authority. [Compton Dep. 39:5-10; 48:11-22].[3] On September 15, 2025, President Boyd sent an email to all Board members attaching his standardized email response and a social media post and stated the following:

> Dear Trustees,
> Please see the below responses to the social media post from yesterday. If you haven't seen it, text me and I'll send you a copy. We are in a firestorm ever since. We are discussing faculty hand book, board policy, and legal ramifications. I'd welcome a call if you'd like to discuss more.

[Compton Dep. Ex. 109 (Exhibit B attached hereto)].

This email, notably, made no mention of placing Plaintiff on administrative leave or terminating Plaintiff. President Boyd, who sent the email, testified in his deposition in this case that no Board member ever called him about the matter. [Boyd Dep. 43:17 to 50:13].[4] Receipt of this notification email was the full extent of the Board's involvement in this matter.

Merely receiving an email containing information about a University "firestorm" does not remotely rise to the level of "active unconstitutional behavior." Plaintiff does not, and cannot allege, that the Board members took any action to encourage or discourage Chancellor Plowman to terminate Plaintiff, nor did they directly participate in the decision. They were informed by the President of a "firestorm," nothing more. None of them ever spoke to Chancellor Plowman about her decision, [Plowman Dep. 124:7-22],[5] and aside from a single phone conversation between President Boyd and Chair Compton, none of them spoke to President Boyd. Chair Compton testified repeatedly during his deposition in this case that it was not the Board's responsibility to interfere with a campus decision made by the Chancellor:

---

[3] Chair Compton was deposed in this case on February 4, 2026, prior to Plaintiff filing her current motion to amend her complaint. A copy of relevant excerpts of his deposition is attached as Exhibit A).
[4] President Boyd was deposed in this case on January 8, 2026. [Doc. 46].
[5] Chancellor Plowman was deposed in this case on January 7, 2026. [Doc. 45].

6

| | | |
|---|---|---|
| Q: | So the board defers to the Chancellor? | |
| A: | We defer to the board policies. | |
| Q: | You defer to the board policies, and then it's the Chancellor who gets to interpret them? | |
| A: | On this particular example, the Chancellor – as it relates to who we hire and fire at a faculty level, that ultimately resides with the Chancellor. | |

[Compton Dep. 39:3-10 (Exhibit A)]. Further, Chair Compton testified:

| | | |
|---|---|---|
| Q: | Did the board of trustees have the power to suspend any disciplinary action taken against Dr. Shirinian? | |
| A: | No. Because the board policy is, again, the – ultimately the Chancellor's the decision mak[er] for the campuses, and – and that Chancellor has the authority to make decisions. | |
| Q: | So whatever the Chancellor says goes when it comes to decisions made by the Chancellor? | |
| A: | As it relates to faculty. As it relates to this question, that certainly was in the Chancellor's realm of responsibility. | |
| Q: | When is it not within the Chancellor's realm of responsibility? | |
| A: | I think it is within the Chancellor's realm of responsibility. | |
| Q: | Always? | |
| A: | Yes. According to the board policy, yes. | |

[Compton Dep. 48:11 to 49:4 (Exhibit A)].

President Boyd's deposition testimony in this case aligns with Chair Compton's testimony:

| | | |
|---|---|---|
| A: | I'll say – and as a policy, the board doesn't get involved in personnel matters. We have 14,000 employees, and they don't weigh in on personnel matters. | |
| Q: | When did [Chair Compton] share that with you. | |
| A: | It's a general rule. | |
| Q: | What role does the board have, if any, in personnel matters? | |
| A: | They hire and fire the president. Then I'm responsible for everything else. | |

[Boyd Dep. 223:22 to 224:7 (Doc. 46)].

President Boyd testified about how the University's chain of command operates:

I would support the Chancellor, and then the – the board would support me. The – the governor and the – the state could fire all of the board members, as they've done before, and – and change the decision. But unless something drastically like that happens, *the Chancellor will make the final decision*.

[Boyd Dep. 227:4-10 (Doc. 46) (emphasis supplied)].

7

This testimony is consistent with the statutory authority given to the Board by the Tennessee General Assembly, which states that the Board shall:

> Exercise general control and oversight of the University of Tennessee system and its institutions, delegating to the president the executive management and administrative authority necessary and appropriate for the efficient administration of the system or necessary to carry out the mission of the system, and *delegating to each chancellor the executive management and administrative authority necessary and appropriate for the efficient administration of such chancellor's institution and its programs, subject to the general supervision of the president*. The president shall exercise administrative authority over the chancellors.

Tenn. Code Ann. § 49-9-208(d)(1)(P) (emphasis supplied).

Thus, the Board has no statutory authority or obligation to interfere with Chancellor Plowman's employment decisions – the President has "administrative authority" over the chancellors. At most, the Board merely delegated to Chancellor Plowman the authority necessary for the efficient administration of UTK, in accordance with state law. Plaintiff does not and cannot allege any "active unconstitutional behavior" by the Board, whose members did nothing but receive a notification email from President Boyd about a "firestorm." They took no action to encourage, condone, authorize, approve, or knowingly acquiesce in the Chancellor's decision. They took no action whatsoever, and inaction is ***clearly*** insufficient to impute individual liability to any of them. Alleging a mere failure to act, without more, is insufficient to state a claim of supervisory liability. *Does v. Whitmer*, 69 F.4th 300, 307 (6th Cir. 2023); *see also Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) ("[S]upervisory liability also has sharp limits. It will not attach for "a mere failure to act.") ("[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional right of another."); *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 866 (6th Cir. 2020) ("[I]t is not enough for the plaintiff to show that the defendant supervisors were sloppy, reckless or negligent in the performance of their duties.").

The inaction of the Board, in deference to Chancellor Plowman's authority over campus personnel matters, is insufficient to impute supervisory liability under § 1983 to the Board. This is not enough to state a claim upon which relief can be granted against the Board members; thus, these claims would be subject to dismissal under Rule 12(b)(6) and adding the Board members as individual party defendants to this lawsuit would be futile. Therefore, Plaintiff's motion to amend to add any individual member of the Board of Trustees as a defendant in this case should be denied.

## II. PLAINTIFF CANNOT IMPOSE LIABILITY ON ADVISORS WHO WERE NOT IN A DECISION-MAKING ROLE.

### A. The lay members of the Advisory Group had no authority to stop Chancellor Plowman from taking actions that were within the scope of her authority.

Plaintiff also seeks to add non-attorney members of the Chancellor's staff and the President's staff (the "Advisory Group") as parties to this lawsuit. This group of proposed Defendants include two members of Chancellor Plowman's staff: Tisha Benton, Vice Chancellor for Communications and Marketing, and Matthew Scoggins, Chief of Staff. Both report directly to Chancellor Plowman. The Proposed Complaint alleges that Ms. Benton "participated by drafting, approving, or disseminating communications" regarding Plaintiff's employment [Doc. 51-1, ¶ 69], but not that she had any role in the decision. The Proposed Complaint alleges that Mr. Scoggins "manag[ed]" the process, "interface[ed] with legal counsel and the Chancellor," and somehow "ensur[ed]" the continuation of the process. [Doc. 51-1, ¶ 71], but not that he had any role in the decision.

The Advisory Group curiously also includes two members of President Boyd's staff who never spoke to Chancellor Plowman at all (according to the Proposed Complaint and record evidence): Carey Whitworth, Vice President for Governmental Relations, and Melissa Tindell, Vice President for Communications and Marketing. Plaintiff imputes liability on Ms. Whitworth

9

for receiving and forwarding an email from a state legislator to President Boyd [Doc. 51-1, ¶ 68] and on Ms. Tindell for counting incoming emails into her inbox and "managing institutional messaging." [Doc. 51-1, ¶ 31, 70]. The Proposed Complaint contains zero allegations that they had any role in the Chancellor's decision-making process.

Apparently, Plaintiff believes these four "downstream" officials could be liable because they were aware of Chancellor Plowman's decision and failed to intervene ([Doc. 51-1, ¶ 67 (alleging that the four putative defendants "enabled and prolonged" the alleged unconstitutional action)), but no case decision Defendants could find imposes liability on *subordinate* employees who merely advise the decision-maker.[6] Again, the Sixth Circuit has held that mere inaction by non-decision-makers is insufficient to impute section 1983 liability on them because their failure to act is not a substantial factor in the plaintiff's underlying constitutional injury. *See, e.g., Fritz v. Charter Twp. of Comstock*, 463 F. App'x 493, 500 (6th Cir. 2012) (finding no liability under § 1983 for a defendant who "was not in a position to terminate Plaintiff . . . and lacked authority to take adverse action against her"); *Poppy v. City of Willoughby Hills*, 96 F. App'x 292, 294-95 (6th Cir. 2004) ("Because [defendant] was not the decisionmaker, he cannot be held liable under § 1983 for the City Council's decisions regarding [the plaintiff's] terms and conditions of employment."); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (dismissing a First Amendment retaliation claim against a non-decision-maker because no "causal connection" existed between the filing of a grievance against that defendant and the subsequent "retaliation" that formed the basis for the plaintiff's claim); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998) (in order for liability to attach to non-decision-makers, "Plaintiff had to prove that

---

[6] As Chancellor Plowman testified, she sought advice from members of her Cabinet and counsel from her attorneys. [Plowman Dep. 44:19 to 50:14]. However, the decision was hers and hers alone. [Plowman Dep. 81:16-18, 87:3-10, 99:23 to 100:13, 176:23 to 177:21; Boyd Dep. 223:22 to 224:7; Compton Dep. 48:11 to 49:4].

10

they did more than play a passive role in the alleged violation or showed mere tacit approval of the events. Liability under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence. Plaintiff must show that [non-decision-makers] otherwise encouraged or condoned the actions of the other Defendants.").

The four lay University employees in the Advisory Group lacked authority to terminate Plaintiff, and they lacked authority to override Chancellor Plowman's decision. They played no more than a passive role, and Plaintiff makes no allegation that they "encouraged or condoned" Chancellor Plowman's actions. [Doc. 51-1, ¶¶ 67-71]. They were not decision-makers, so they have no liability under § 1983 and, therefore, Plaintiff cannot state a claim against them upon which relief can be granted. Her attempt to amend her complaint to add these four members of the Advisory Group as defendants is, therefore, futile.

> **B. Plaintiff's attempt to add the General Counsel as a defendant is pointless grandstanding; he had no duty to intervene in Chancellor Plowman's decision.**

Two additional members of the Advisory Group bear separate analysis. Plaintiff audaciously seeks to add Ryan Stinnett, General Counsel of the University, and Cynthia Moore, special counsel to the Board,[7] as defendants in their individual capacity. All of the arguments in the above section apply to Mr. Stinnett and Ms. Moore, because, as attorneys, they are not decision-makers. However, as to the attorneys, Plaintiff goes even further out on a limb than she does with the other putative defendants—she alleges (without any citation to legal authority) that Mr. Stinnett and Ms. Moore are liable for their "inaction" and that their "specialized roles" imposed a duty to intervene.

---

[7] Ms. Moore serves as both Special Counsel to the Board of Trustees and Secretary of the Board. [Doc. 51-1, ¶ 15]. Thus, her role must be analyzed both as a staff liaison to the Board and as an attorney for the Board.

11

Of course, Plaintiff does not allege any misconduct by Mr. Stinnett or Ms. Moore. Instead, Plaintiff bases liability on Mr. Stinnett's and Ms. Moore's (unknown) legal advice and failure to intervene in their clients' actions. The Proposed Complaint does not allege that Mr. Stinnett or Ms. Moore actively participated in the decision. Indeed, the lawyer's role is not that of a decision maker, and Plaintiff's Amended Complaint contains no allegations that either Mr. Stinnett or Ms. Moore took any decision-making action. Plaintiff does not and cannot know the substance of any privileged conversations between Mr. Stinnett or Ms. Moore and University officials, and any discovery into Mr. Stinnett's or Ms. Moore's legal advice would be barred by the attorney-client privilege.

Perhaps because the theory is so outrageous, cases are scant where parties have attempted to include attorneys as section 1983 defendants. In *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 316-17 (W.D.N.Y. 2014), a plaintiff similarly named an in-house attorney based on the attorney's failure to act to prevent a constitutional violation. The court dismissed the claim under Rule 12(b)(6), finding that the attorney's role as legal advisor to the defendants was insufficient to establish liability. As the court stated,

> Although an attorney should not be permitted to use his or her legal role as a shield behind which to engage in misconduct with impunity, permitting a cause of action to survive based on vague speculation regarding improper legal advice would invite both interference with the attorney-client relationship and vexatious litigation.

*Id.* at 317; *see also Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 367 (N.D.N.Y. 2014) ("Where the allegations in the complaint show that counsel was not acting beyond the scope of his employment, by either placing his own interests or those of another before the interests or instructions of the client, even erroneous advice will not expose counsel to liability to the third

party.").[8]  And there are no cases imposing liability upon an attorney based on a "specialized role" to step in and prevent any alleged unconstitutional actions by any person.

Much like the proposed claims in *Barsoumian*, Plaintiff's putative claims against Mr. Stinnett and Ms. Moore are solely based on "vague speculation regarding improper legal advice." *Barsoumian*, 29 F. Supp. 3d at 317.  Legal advice from Mr. Stinnett and Ms. Moore is protected by the attorney-client privilege, and adding them to this lawsuit would not merely invite "interference with the attorney-client relationship," it would create a pointless sideshow of privilege objections and counter-objections.  The Proposed Complaint contains no allegations that Mr. Stinnett or Ms. Moore owed Plaintiff a duty to intervene or that they breached any legal duty to her whatsoever.  The allegations against them would not survive a motion to dismiss under Rule 12(b)(6), and so Plaintiff's motion to add them should be denied as futile.

### III. PLAINTIFF'S ATTEMPT TO ADD A CLAIM FOR DEPRIVATION OF PROCEDURAL DUE PROCESS IS FUTILE BECAUSE PLAINTIFF HAS NOT PLEADED THAT SHE DID NOT RECEIVE CONSTITUTIONALLY SUFFICIENT PROCESS.

In addition to her First Amendment claims, Plaintiff now seeks to add a claim that she was deprived of her procedural due process rights under the Fourteenth Amendment.  She asserts this claim against the current Defendants and against the putative defendants.  [Doc. 51-1, ¶¶ 102-08].

Defendants concede that Plaintiff has, at a minimum, a property interest in her employment with the University.  However, Plaintiff's procedural due process claim under the Fourteenth

---

[8] Other courts under similar circumstances have found that government attorneys performing "traditional functions of counsel" do not act under "color of law" for § 1983 purposes.  *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981) (holding that a public defender does not act under color of state law when performing a lawyer's traditional functions of counsel to a defendant in a criminal proceeding"); *Willhite v. Arrants*, No. 3:23-cv-TAV-JEM, 2023 WL 11915398, at *2 (E.D. Tenn. Aug. 8, 2023) (same); *Mincy v. Luzerne Cnty., Penn.*, No. 3:12-cv-00608, 2015 WL 13203062, at *4 (M.D. Pa. Jan. 15, 2015) (including in these "traditional functions of an attorney" for which an attorney cannot be acting under color of law "rendering advice, drafting correspondence on behalf of a client as to legal disputes, or otherwise engaging in litigation and equivalent legal activities") (cleaned up).

Amendment is futile because she received notice and an opportunity to be heard, which is all the process the Constitution requires.

Plaintiff does not specify in her complaint the process she believes she was due, but she appears to be complaining that Chancellor Plowman did not follow a process outlined in either a Board policy or a Faculty Handbook. [*See* Doc. 51-1, ¶ 105]. To the extent her claim is that Chancellor Plowman did not follow an internal policy regarding her suspension or termination, that does not create a constitutional claim. "Violation of a state's formal procedure . . . does not in and of itself implicate constitutional due process concerns.'" *JiQiang Xu v. Mich. State Univ.*, 195 F. App'x 452, 457 (6th Cir. 2006) (quoting *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996) (citation omitted)). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Id*. (citations omitted); *see also Anderson v. Ohio State Univ.*, 26 F. App'x 412, 414 (6th Cir. 2001) (allegation that university failed to follow its own rules and procedures does "not establish a cognizable constitutional violation."); *Lauve v. Winfrey*, 852 F. App'x 184, 186 (6th Cir. 2021) ("It is a long-established principle 'that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.'"); *Bates v. Sponberg*, 547 F.2d 325, 331 (6th Cir. 1976) ("Since 42 U.S.C. § 1983 offers relief only to those persons whose federal statutory or federal constitutional rights have been violated, we conclude that the mere departure from the university regulations, standing alone, did not deprive [the plaintiff] of any right which can be asserted in this court.").

The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Purisch*, 76 F.3d at 1423 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). "In general, 'something less' than a

full evidentiary hearing is sufficient prior to adverse administrative action." *Id*. at 1424 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)).

The Proposed Complaint actually pleads facts that show that Plaintiff has, in fact, received constitutionally sufficient process. On September 15, 2026, Chancellor Plowman sent Plaintiff an immediate notification that Plaintiff was placed on paid administrative leave. [Doc. 51-1, ¶ 43; *see also* Am. Compl. (Doc. 25), Ex. 1]. The following day, Chancellor Plowman provided Plaintiff with full notice of the grounds for her decision. [Doc. 51-1, ¶ 46; *see also* Am. Compl. (Doc. 25), Ex. 2]. Plaintiff responded to Chancellor Plowman's letter on September 22, 2026. This process satisfies constitutional due process requirements. [Doc. 51-1, ¶ 47; *see also* Am. Compl. (Doc. 25), Ex. 3].

Plaintiff complains that she was entitled to a neutral decision-maker prior to being placed on administrative leave, but, under well-established case law, she was not. "[I]n the pretermination stage, the employee does not have a right to, and the Constitution does not require, a neutral and impartial decisionmaker. The 'right of reply' before the official responsible for the discharge is sufficient." *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004). "It is at the post-deprivation stage where a neutral decisionmaker is needed to adjudicate the evidence. Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the employee has received all the process due under the Constitution." *Id*. *Farhat* is squarely on point: the process provided to Plaintiff—and as fully laid out by Plaintiff in her Proposed Complaint and her First Amended Complaint—fully satisfies the requirements of the Constitution. Thus, amending her complaint to add a section 1983 due process claim is futile.

15

Case 3:25-cv-00528-KAC-JEM   Document 52   Filed 02/24/26   Page 15 of 16
PageID #: 1455

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order denying Plaintiff's Motion for Leave to File a Second Amended Complaint, and this lawsuit should proceed with her First Amended Complaint being the operative pleading.

Respectfully submitted this 24th day of February, 2026.

**THE UNIVERSITY OF TENNESSEE**

*s/ Michael D. Fitzgerald*
Michael D. Fitzgerald (BPR # 20079)
T. Mitchell Panter (BPR #031744)
505 Summer Place, UTT#1155
Knoxville, TN 37902
(865) 974-9321
mike.fitzgerald@tennessee.edu
mitchell.panter@tennessee.edu

*Attorneys for Defendants*