# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| TAMAR SHIRINIAN | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 3:25-cv-528-KAC-JEM |
| | ) | |
| v. | ) | |
| | ) | Judge Crytzer |
| DONDE PLOWMAN, et al. | ) | Magistrate Judge McCook |
| in their personal and official capacities | ) | |
| | ) | JURY DEMAND |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

## INTRODUCTION

This is not a case about a Facebook comment.

It is not about a Chancellor choosing to fire a professor.

It is a case about who governs a public university and what governs them.

It is about institutional and Constitutional failure.

This case stands apart from other post–Charlie Kirk free speech cases. In nearly every other instance, if not every instance, public institutions of higher education either corrected course or courts recognized the constitutional violation. Here, the University doubled down.

This case is about:

• State actors reacting to explicit political demands from state and federal officials.

• Trustees and senior executives choosing optics and appeasement over constitutional obligation

• Donor leverage distorting public-decision making—including a written threat to not give more than $10,000,000 if Dr. Shirinian remained employed.

• The abandonment of settled Supreme Court precedent and due process when adherence is inconvenient.

• A governance structure that suppresses documentation rather than ensures transparency and constitutional compliance.

• The selective enforcement of policy—ignoring comparable or more inflammatory protected speech within the University while retroactively constructing a safety-based rationale to justify a decision already made.

At its core, this case asks a structural question:

When a public university faces political outrage and donor pressure, does it remain governed by the Constitution — or by whoever shouts the loudest?

The First Amendment does not recede in the face of discomfort. It does not bend to legislators. It does not yield to donors. And it does not permit discipline based on third-party outrage.

Based on documents provided by Defendants and sworn deposition testimony, the Proposed Second Amended Complaint ("SAC") alleges that Defendants knew the constitutional constraints. They discussed them. They emailed about them. They understood them. And they proceeded and, to this day, continue to proceed anyway.

That is not a mistake.

That is a governance failure.

## **<u>PLAINTIFF'S MOTION FOR LEAVE SHOULD BE GRANTED</u>**

Plaintiff's Proposed Second Amended Complaint pleads specific, time-stamped factual allegations drawn directly from documents produced by Defendants and sworn deposition testimony. The motion seeks to conform the pleadings to the record developed in discovery to date and to present a single, complete operative complaint.

Defendants' response does not meaningfully address Rule 15(a)(2)'s governing standard. Instead, it disputes Plaintiff's factual allegations, advances alternative factual characterizations, and presses merits defenses—including qualified immunity and arguments concerning personal involvement. Those issues are properly addressed, if at all, through motions directed to the operative pleading after amendment.

Rule 15 directs that leave to amend be "freely given when justice so requires." The proposed SAC is timely, based on discovery obtained from current Defendants, and does not cause undue delay or prejudice. Because Defendants have not demonstrated bad faith, undue prejudice, or futility, leave should be granted and any merits challenges addressed, if necessary, through a motion directed at the operative pleading.

## LEGAL STANDARD

The Court's inquiry in examining a motion for leave to amend, as well as a motion to dismiss, is limited to the face of the pleading. See *Roth Steel Prod. v. Sharon Steel Corp*. 705 F.2d 134, 155 (6th Cir. 1983) and *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 382–83 (6th Cir. 1993). Although futility may justify denial of leave, futility is assessed under the Rule 12(b)(6) standard. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Accordingly, the Court must accept the proposed allegations as true and draw all reasonable inferences in Plaintiff's favor. *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000). The Court does not weigh evidence, resolve factual disputes, or adjudicate affirmative defenses at this stage, nor may it credit Defendants' competing factual narrative over the well-pleaded allegations of the proposed complaint. See *Thiokol*, 987 F.2d at 382–83. Qualified immunity is generally inappropriate for resolution at the pleading stage where the complaint plausibly alleges violation of clearly established rights and material facts remain disputed. See

*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021). Where the amendment states a plausible claim, denial constitutes an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640 (6th Cir. 2018).

## ARGUMENT

### I.     Defendants seek a merits ruling beyond the scope of Rule 15.

Defendants' opposition reads as a premature motion for summary judgment. Rule 15 does not authorize mini-trials on deposition excerpts. Defendants' opposition primarily argues that the SAC fails under § 1983 because of alleged deficiencies in ratification, knowledge, supervisory liability, and qualified immunity. Defendants do not argue undue delay. They do not argue bad faith. They do not argue prejudice. Their opposition rests solely on a summary judgment-like motion to attempt to support a futility argument. In doing so, Defendants rely on deposition excerpts and competing factual narratives. [1] That approach improperly exceeds the limited futility inquiry.

At the amendment stage, the Court does not determine which version of events is correct. *Rose*, 203 F.3d at 420. Nor does it resolve qualified immunity where the complaint plausibly alleges the violation of clearly established rights and material facts remain in dispute. See *Crawford v. Tilley*, 15 F.4th 752, 760–61 (6th Cir. 2021).

---

[1] For instance, Defendants' response contains several characterizations of the record that Plaintiff disputes, including assertions that the Motion for Leave was filed "despite no support within the record as developed so far" (Docket Entry No. 52, at 1); that Board members "were informed by the President of a 'firestorm,' nothing more" (id. at 6) and "did nothing but receive a notification email from President Boyd" (id. at 8); and that Plaintiff's claims against Mr. Stinnett and Ms. Moore are "solely based on vague speculation regarding improper legal advice" (id. at 13). At the Rule 15 stage, however, the Court evaluates the sufficiency of the proposed allegations, not competing factual characterizations of the developing record. *See* Thiokol, 987 F.2d at 382–83.

4

If Defendants believe the SAC fails to state a claim, the appropriate course is to permit amendment and allow a motion directed at the operative pleading in the ordinary sequence. Rule 15 does not authorize a dispositive ruling on a developing factual record.

**II.      Defendants' sole cited futility authority underscores why leave should be granted.**

Defendants rely on the unpublished case of *Billiards & Brews, LLC v. City of Knoxville*, No. 3:23-cv-181, 2025 WL 2495773, at *3–4 (E.D. Tenn. Aug. 29, 2025), but that case highlights why amendment is proper here. There, the court found futility because the proposed complaint referenced the added defendant only in a single conclusory sentence—asserting awareness—without factual allegations tying that defendant to unconstitutional conduct, and only after the plaintiff did not even address Defendant's argument.

This case presents materially different circumstances. Unlike the conclusory allegations rejected in *Billiards & Brews*, the proposed SAC here includes detailed factual allegations drawn from sworn testimony and Defendants' own documents. The proposed SAC pleads approximately twenty (20) pages of targeted, date-and-time-specific allegations based on sworn testimony and Defendants' documents, describing how each added defendant learned of the constitutional violations, had authority and practical ability to intervene, and nonetheless ratified, facilitated, or knowingly acquiesced in the constitutional violations and the ongoing deprivation. Unlike in *Billiards & Brews*, Plaintiff fully and squarely addresses Defendants' futility argument. The SAC is not futile.

**III.      The SAC plausibly pleads individual-capacity liability.**

**A.  The SAC alleges personal involvement through notice and ratification.**

The SAC alleges that, after receiving notice of ongoing constitutional deprivations, each Defendant possessed authority and the practical ability to intervene and either actively participated

or deliberately chose not to do so. That is not respondeat superior liability or vicarious liability. Instead, it alleges\s a case of actual knowledge followed by deliberate ratification through both active intervention and non-intervention.

The Sixth Circuit recognizes that supervisory officials may be individually liable where they "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982); see also *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009). Liability may attach where an official's failure to act after notice amounts to deliberate indifference. See *Peatross v. City of Memphis*, 818 F.3d 233, 242–44 (6th Cir. 2016); *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002) (noting that authorization, approval, acquiescence, or "turning a blind eye for fear of what they might see" are all sufficient to confer individual liability).[2]

The SAC alleges specific, time-stamped facts showing notice, authority, and continued enforcement, or acquiescence of the challenged actions, which remain continuous. Accepting Plaintiff's allegations as true, leave must be granted. The sufficiency of proof is not before the Court.

---

[2] With regards to the SAC additions of Defendants Stinnett and Moore, Defendants contend that Plaintiff's theory is both "outrageous" and based on "vague speculation regarding improper legal advice." Doc. 52, at 11-13. In support, Defendants cite a holding in *Barsoumian v. Williams*, 29 F.Supp.3d 303, 316-17 (W.D.N.W. 2014):

> Although an attorney should not be permitted to use his or her legal role as a shield behind which to engage in misconduct with impunity, permitting a cause of action to survive based on vague speculation regarding improper legal advice would invite both interference with the attorney-client relationship and vexatious litigation.

What Defendants fail to address, however, is that *Barsoumian* helps Plaintiff. Plaintiff's SAC alleges that Defendants Stinnett and Moore used their legal roles as "shields to behind which to engage in misconduct with impunity." See id.; SAC at ¶¶ 1, 2, 4, 25, 26, 31-42, 45, 50-59, 63-66, 74-80, 86-89. Plaintiff's theory is not based on legal advice or traditional functions of counsel.

**B. The alleged ratification concerns an ongoing deprivation.**

Where a constitutional violation is ongoing, an official's refusal to intervene after notice constitutes actionable personal involvement. However, Defendants' argument assumes the SAC alleges only a failure to prevent a single past act. The SAC alleges continued enforcement of an ongoing deprivation after notice and with authority to intervene. The Sixth Circuit has recognized that knowingly allowing unconstitutional conduct to continue may constitute personal involvement. *Peatross*, 818 F.3d at 242–44; *Leary v. Daeschner*, 349 F.3d 888, 903–04 (6th Cir. 2003).

Whether the evidence ultimately substantiates those allegations is a merits question. At this stage, the allegations are sufficient.

**IV.     The SAC plausibly alleges violations of clearly established First Amendment rights.**

The SAC alleges that Plaintiff engaged in speech as a private citizen on a matter of public concern and that Defendants imposed and maintained adverse action without evidence-based disruption attributable to her workplace conduct.

It has long been clearly established that public employees may not be disciplined for speech as private citizens on matters of public concern absent constitutionally sufficient justification under *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983). See also *Lane v. Franks*, 573 U.S. 228 (2014); *Rankin v. McPherson*, 483 U.S. 378, 384–92 (1987)(protecting a private statement expressing approval of violence against the President where there was no disruption); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 543–44 (6th Cir. 2012) (holding that retaliation for protected speech on matters of public concern violates clearly established law in this Circuit). Further, the First Amendment prohibits not only retaliation for protected speech but also discrimination based on viewpoint. *Rosenberger v. Rector & Visitors of*

*Univ. of Va.*, 515 U.S. 819, 828–29 (1995) ("Viewpoint discrimination is an egregious form of content discrimination.").

It has long been clearly established in this Circuit that a public employer may not punish an employee for protected speech based solely on third-party hostility or political pressure. Moreover, a "heckler's veto" does not supply constitutional justification for discipline. Government actors may not impose adverse consequences because they disagree with the speaker's perspective. *Id*. at 828.   Speech cannot be restricted merely because it is troubling to others. See, e.g., *Snyder v. Phelps*, 562 U.S. 443, 458, 461, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011) (explaining that the First Amendment protects "hurtful speech on public issues to ensure that we do not stifle public debate" when addressing members of the Westboro Church). To the contrary, upsetting speech on public issue picketing is an exercise of basic constitutional rights in their most pristine and classic form that rests on the "highest rung of the hierarchy of First Amendment values." *Connick*, 461 U.S. at 145 (citing *Carey v. Brown*, 447 U.S. 455, 467, 100 S. Ct. 2286, 65 L. Ed. 2d 263 (1980)). Third-party hostility or anticipated public reaction does not substitute for actual or reasonably predicted disruption grounded in facts. See *Snyder v. Phelps*, *supra*; *Bonnell v. Lorenzo*, 241 F.3d 800, 815–16 (6th Cir. 2001).

At a pleading stage, where material facts are disputed, issues of qualified immunity cannot be resolved.  This is especially true in First Amendment retaliation and viewpoint discrimination cases involving motive. Taking the SAC's allegations as true, Defendants are not entitled to dismissal on qualified immunity grounds at the amendment stage. *Crawford*, 15 F.4th at 760–61.

**V.      The SAC plausibly alleges procedural due process violations.**

The SAC alleges that the disciplinary process was unwritten, ad hoc, and effectively predetermined, rendering any appeal illusory. SAC ¶¶ 48, 105.  Procedural due process requires

meaningful notice and a meaningful opportunity to be heard before a neutral decisionmaker. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985). A predetermined or sham process does not satisfy constitutional requirements. See *Leary*, 349 F.3d at 903–04.

Accepting the allegations as true, Plaintiff has plausibly alleged a due process violation. The sufficiency of the evidence is not before the Court on a Rule 15 motion.

## CONCLUSION

The proposed amendment is timely, grounded in discovery produced by Defendants, and causes no undue delay or prejudice. Because the proposed SAC plausibly states constitutional claims and because Defendants' opposition seeks resolution of disputed factual issues beyond the scope of Rule 15, the motion for leave must be granted.

Respectfully Submitted,

/s/ Robert C. Bigelow, Esq.
Robert C. Bigelow, Esq. #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
(615) 829-8986
rbigelow@bigelowlegal.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 26, 2026, a copy of the foregoing is being sent via email to all opposing counsel per the Court CM/ECF system:

<u>/s/ Robert C. Bigelow</u>
Robert C. Bigelow #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
rbigelow@bigelowlegal.com
(615) 829-8986