**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **TAMAR SHIRINIAN**<br><br>*Plaintiff*,<br><br>**v.**<br><br>**DONDE PLOWMAN, et al.**<br>**in their personal and official capacities**<br><br>***Defendants.*** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br>**Civil Action No. 3:25-cv-528-KAC-JEM**<br><br><br>**Judge Crytzer**<br>**Magistrate Judge McCook**<br><br>**JURY DEMAND** |

---

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

---

Faced with direct, behind the scenes, coercive pressure from legislators, credible eight-figure donor threats, and an escalating public-relations crisis, UT and UTK officials admitted under oath that their central concern was not safety or disruption—but that a doxed, private Facebook comment had gone viral and made the University's "brand" look bad. As Chancellor Plowman's sworn testimony explained, when a public university loses public trust, it "loses everything."

Private text messages between the UT President Randy Boyd and Chancellor Plowman confirm what the sworn testimony already establishes: the decision to terminate Dr. Shirinian was driven by politicians, donors, alumni, parents, and "so many others"—not by any constitutionally permissible basis.

The record shows that Defendants, including the President, Chancellor, and members of the Board of Trustee, did not rely on, ignored, or purposely failed to seek legal guidance before acting. Instead, UT's own lawyers—functioning mainly in a public-relations and business capacity—helped their clients craft after-the-fact justifications, including false public statements that Dr. Shirinian advocated for ad endorsed violence and murder.

After reviewing over 5,000 pages of Defendants own documents, more than 1,000 pages of sworn testimony from depositions taken in January and February, and Defendants' own March court filing, the Proposed Second Amended Complaint (attached as Exhibit A) pleads relevant facts and allegations in detail. Ultimately, there is no genuine issue of material fact: UT/UTK Defendants *admittedly* acted in response to political, donor, and public backlash to Dr. Shirinian's viewpoint—a classic heckler's veto the First Amendment, Supreme Court, and Sixth Circuit Court of Appeals expressly forbid.

Plaintiff respectfully moves for leave to file the attached Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Doing so moots Plaintiff's prior Motion for Leave and related filings (Docs. 51-53).[1]

Leave should be freely granted because the proposed amendment is timely, supported by evidence obtained during discovery, not futile, and will not prejudice Defendants. The Proposed Second Amended Complaint (attached as Exhibit A) references the sworn admissions as well as many significant other admissions made under oath, adds three (3) new defendants in their individual capacities---Chris Todd, Timothy Burchett, and John Doe #1. It provides a significantly more accurate theory of the case based on evidence obtained in discovery that align the case with the actual decision-makers, why and how decisions were made, and individuals who significantly influenced the decision. In doing so, the Proposed Second Amended Complaint also drops one of two previously pled constitutional claims and adds state law claims revolving around defamation and tortious interference with employment and contractual relationships.

---

[1] Plaintiff respectfully submits that the fully developed evidentiary record establishes a significant likelihood of success on her viewpoint discrimination and heckler's veto claims and supports the imminent entry of preliminary injunctive relief Plaintiff has already sought. Plaintiff is hopeful that she will soon be able to return to teach and publish at UTK.

## I. PROCEDURAL POSTURE

Since the filing of the operative complaint and amended complaint, the parties have engaged in discovery, including the production of documents and sworn testimony of key decision-makers, as well as legislators, and the plaintiff herself. That discovery has materially developed the factual record concerning (1) which individuals personally participated in the challenged actions, (2) what information was considered (or not considered) at the time of the decision, (3) the basis for actions taken against Plaintiff, and (4) the absence of any contemporaneous safety or disruption analysis. Further, significant new developments only recently occurred.

The proposed Second Amended Complaint is a direct product of this developed record and discovery remains ongoing.

## II. RULE 15 STANDARD

When ruling on Motions for Leave, filed under Rule 15(a)(2), courts "should freely give leave when justice so requires."

The Sixth Circuit has repeatedly held that leave should be denied only for reasons such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. None of those factors is present here. As such, there is no legitimate reason not to grant this Motion to Amend in short order.

## III. THE PROPOSED AMENDMENT IS TIMELY AND BASED ON NEWLY DEVELOPED EVIDENCE

The proposed amendment is based on evidence obtained through discovery, including sworn testimony and documents produced by Defendants.

That evidence clarifies:

- which individuals were directly involved or significantly influenced the decision-making process,
- what information was (and was not) considered at the time of the decision,
- and the absence of any contemporaneous, evidence-based assessment of disruption or safety.

Plaintiff moved promptly after obtaining and analyzing a tremendous amount of evidence. There has been no undue delay.

## IV. THE AMENDMENT NARROWS THE CONSTITUTIONAL ISSUE AND CLARIFIES THE CASE

The proposed Second Amended Complaint streamlines this action in two important ways.

First, it focuses the claims on the core constitutional theory fully supported by the developed record. Second, it limits the defendants to those for whom discovery has produced concrete evidence of direct personal involvement in the decision-making process and individuals who significantly influenced the decision, defamed Plaintiff, and tortiously interfered with her employment with UTK.

## V. DEFENDANTS WILL NOT BE PREJUDICED

Defendants will suffer no undue prejudice from the proposed amendment, which relies on facts derived almost solely from Defendants' own documents and testimony. Defendants are already aware of those facts and have been actively litigating the issues they present. No new theory requires fundamentally different discovery. And, to the extent any targeted supplemental discovery is necessary, it can easily be completed within the existing schedule or with modest adjustment.


Case 3:25-cv-00528-KAC-JEM Document 58 Filed 03/27/26 Page 4 of 7 PageID #: 2303

## VI. THE AMENDMENT IS NOT FUTILE

The viewpoint discrimination and due process claims in Plaintiff's Proposed Second Amended Complaint are based on Defendants own documents, sworn admissions from depositions taken in January and February, and Defendants' own March court filing (Doc. 55). All state law claims are strongly supported by a mix of Defendants' own documents, sworn deposition testimony, temporal proximity, reasonable inferences, and significantly developed factual alignment with the required elements needed to support the claims.

Based on the record to date, the Government disciplined Dr. Shirinian because her viewpoint triggered negative reactions from politically aligned actors, donors, and legislators---and the University decided to punish and silence her rather than stand by the First Amendment. This heckler's veto is backed by undisputed evidence:

- Legislators demanding Plaintiff's termination
- Donors threatening withdrawal, including one donor threating to withdraw over ten million dollars ($10,000,000.00) if Plaintiff was not terminated
- UT/UTK tracking extremely negative public/donor sentiment towards Plaintiff
- Comparator UTK professor speech speaking out against Charlie Kirk not punished despite extremely similar (if not "worse") "vile" "immoral" or "incendiary" speech
- Board ratification despite knowledge
- Ignoring, not seeking, or failing to rely on legal counsel regarding constitutional issues
- Defendants own sworn testimony
- Decisionmakers aware of all the above

Chancellor Plowman, through her own sworn deposition testimony, admits that Dr. Shirinian was punished because:

- Dr. Shirinian's comment had gone viral.
- Her worry that, when a public university loses the public's trust, they "lose everything."

Private text messages between UT President Randy Boyd and UTK Chancellor Donde Plowmam confirm this by admitting:

**And it wasn't just politicians.**
**It was alumni, parents, and so many others.**

**We did the right thing.**

UT/UTK Defendants punished Plaintiff because her private Facebook comment about a Charlie Kirk---a political activist beloved (and despised) by many---had gone viral, and a significant majority of their base was furious. They then fed the flames by falsely accusing Dr. Shirinian of promoting and endorsing violence and murder.

The established law is clear: the First Amendment does not permit a public university to suppress speech to appease those who threaten disruption. The proper response is to control the crowd---not to silence the speaker. *See Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("[A] function of free speech under our system of government is to invite dispute."); *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134–35 (1992); *Gregory v. Chicago*, 394 U.S. 111, 118 (1969); *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) (en banc).

## VII. <u>LEAVE SHOULD BE GRANTED</u>

This case is still in an active discovery phase. The proposed amendment is grounded in newly developed evidence and presents viable claims supported by specific factual allegations. There is no undue delay, no bad faith, no prejudice, and no futility.

Under Rule 15's liberal standard, leave should be granted.

## VIII. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant leave to file the attached Second Amended Complaint.

Respectfully Submitted,

/s/ Robert C. Bigelow, Esq.
Robert C. Bigelow, Esq. #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
(615) 829-8986
rbigelow@bigelowlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, a copy of the foregoing is being sent via email to all opposing counsel per the Court CM/ECF system:

/s/ Robert C. Bigelow
Robert C. Bigelow #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
rbigelow@bigelowlegal.com
(615) 829-8986