| | |
|---|---|
| TAMAR SHIRINIAN, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **No. 3:25-cv-528-KAC-JEM** |
| ) | **JURY DEMANDED** |
| THE UNIVERSITY OF TENNESSEE ) | |
| KNOXVILLE, DONDE PLOWMAN, ) | |
| RANDY BOYD, and CHARLES NOBLE, ) | |
| in their personal and official capacities, ) | |
| ) | |
| **Defendants.** ) | |

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

---

Defendants Donde Plowman, Randy Boyd, and Charles Noble, individually and in their official capacities (collectively, the "Defendants"), through the Office of the General Counsel for the University of Tennessee, respond to Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 58] as follows:

### INTRODUCTION

This is Plaintiff's second request for leave to file a second amended complaint. She initially proposed to amend her complaint to add 20 defendants, including the entire UT Board of Trustees, and to assert new constitutional claims [Doc 51]. Defendants opposed that motion on grounds of futility. Before the Court could rule on Plaintiff's motion, she filed a second motion for leave to file a new second amended complaint [Doc 58]. She still seeks to add as defendants Ryan Stinnett, the General Counsel of the University; John Compton, Chairman of the UT Board of Trustees; and Cindy Moore, Secretary of the UT Board of Trustees. She now proposes to add U.S. Representative

Tim Burchett, Tennessee State Representative Chris Todd, and an unnamed donor who shared their dismay that Plaintiff was an employee of the university and mentioned their family's trust was set to make a substantial testamentary gift to the UTK Tickle College of Engineering (although they made no threat to withhold it).

Curiously, Plaintiff has pivoted away from a constitution-focused lawsuit. She has abandoned her First Amendment retaliation claim,[1] although she seeks to add a Fourteenth Amendment due process claim, and she now seeks to add five new Tennessee state-law tort claims: three claims against UT defendants, and two against unaffiliated defendants.

While it is inarguable that motions to amend are freely granted under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint may be denied where it is futile, because the amendment cannot withstand review under the standards of a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Billiards & Brews, LLC v. City of Knoxville*, No. 3:23-cv-181, 2025 WL 2495773, at *3, 4 (E.D. Tenn. Aug. 29, 2025). Here, none of the claims proposed by Plaintiff would survive a Rule 12 motion; therefore, her motion to amend is futile and should be denied.

## I. CHAIRMAN COMPTON TOOK NO ACTION IN THIS CASE THAT WOULD VIOLATE § 1983.

Plaintiff seeks to add John Compton, Chair of the UT Board of Trustees in his individual capacity. Even after deposing Chairman Compton, Plaintiff can point to no evidence that Mr. Compton ever communicated with Chancellor Plowman at all about Plaintiff—both Chairman Compton and Chancellor Plowman testified that they never spoke to one another about this matter.

---

[1] Plaintiff separately seeks a preliminary injunction forcing the University to return her to full duty, including classroom teaching. [Doc. 42]. She claims entitlement to this injunction to "prevent further unconstitutional retaliation." Inasmuch as she is no longer claiming unconstitutional retaliation, her motion for a preliminary injunction appears to be withdrawn.

2

[Compton Dep.[2] 84:8-11].  The record reveals that Chairman Compton spoke to President Boyd briefly about the matter, received an email that President Boyd sent to the entire UT Board of Trustees three hours prior to Plaintiff's September 15, 2025 leave action by Chancellor Plowman, and was generally aware of the situation thereafter.  [Compton Dep. 43:22 to 44:9; 46:19 to 47:12; 47:18 to 48:2; 70:23 to 72:16].  Plaintiff claims that Chairman Compton had some supervisory responsibility over Chancellor Plowman, took no affirmative action, and through his inaction, breached his duty to stop Chancellor Plowman from allegedly violating Plaintiff's constitutional rights.  [Doc. 58-1, ¶ 208].  The law simply does not support this claim.

First, and contrary to Plaintiff's assertions, no cause of action for money damages exists against Chairman Compton in his individual capacity because, like all members of the UT Board of Trustees, they "simply have no individual supervisory responsibilities" and therefore could not be acting under "color of law" for § 1983 purposes.  *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 512 (6th Cir. 1996).  To hold otherwise would "create the legal fiction that such supervisory responsibility exists solely by virtue of serving as a member of an official body . . . , ignor[ing] the reality that these board members were unable to act, in a legal sense, except as constituent members of a board majority."  *Id.*  Put another way, Plaintiff's only claim against the Board would be against the body, not its constituent members, and even that claim would fail because the Board, as a state entity, is not a "person" under § 1983, and the 11th Amendment to the United States Constitution bars any *Monell* claim for money damages.  *See, e.g., Morgan v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023).

Second, even if Chairman Compton held individual supervisory authority over University employees, which Defendants dispute, Plaintiff's proposed claims nevertheless fail because in the

---

[2] Please excerpts of the deposition of John Compton cited herein attached as <u>Exhibit D</u>.

Sixth Circuit, government officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates on a theory of *respondeat superior*. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2007) (discussing the rule in the context of a *Bivens* action). Rather, to prevail against a supervisory official under § 1983, a plaintiff must show that the supervisor actively participated in, or "encouraged or condoned," the unconstitutional actions of a subordinate. *Bass*, 167 F.3d at 1048; *see Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (reversing ruling that knowledge constituted acquiescence: mere awareness of subordinate's unconstitutional actions and failure to act without active participation or authorization is insufficient to constitute "acquiescence"). "[M]ere awareness of a violation and failure to remedy it is not equivalent to 'approv[ing] or knowingly acquies[ing] in unconstitutional conduct.'" *King v. Zamiara*, No. 4:02-cv-141, 2009 WL 1067317, at \*2 (W.D. Mich. Apr. 21, 2009) (quoting *Shehee*, 199 F.3d at 300); *Lowe v. Prison Health Svc.*, No. 13-10058, 2014 WL 584944, at \*6 (E.D. Mich. Feb. 14, 2014) ("Supervisors are not liable under § 1983 merely because they are aware of an alleged violation and fail to act—this holds even if the omission is the 'failure [to] remedy the ongoing effects of a constitutional violation.'") (citations omitted); *see also Frodge v. City of Newport*, No. CV 09-59-WOB, 2010 WL 11530630, at \*10 (E.D. Ky. Dec. 29, 2010), *aff'd*, 501 F. App'x 519 (6th Cir. 2012) ("Ratification does not trigger supervisory liability unless a plaintiff can point to specific actions by the supervisor that independently violated plaintiff's constitutional rights.").

Stated differently, government officials cannot be individually liable under § 1983 for a failure to supervise unless they "encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982); *see also Bass*, 167 F.3d at 1048 (explaining that supervisory liability "cannot attach where the

4

allegation of liability is based upon a mere failure to act[,]" . . . but rather, "must be based upon *active unconstitutional behavior*") (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (emphasis supplied)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874; *see also Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) ("We have held that, even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'") (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (no supervisory liability where supervisor was not "personally involved in [unconstitutional actions] or that he encouraged or condoned others in doing so.").

Neither Chairman Compton nor any member of the Board did anything that would satisfy this standard, and Plaintiff's Proposed Second Amended Complaint does not contain any allegation that would support a claim against Chairman Compton. At some point on either Sunday, September 14, 2025, or early on Monday, September 15, 2025, President Boyd called Chairman Compton to inform him that the Chancellor had decided to take action against Plaintiff and that the decision might receive publicity. Chairman Compton made no move to interfere with the Chancellor's decision, as he considered it a campus matter within the Chancellor's authority. [Compton Dep. 39:5-10; 48:11-22]. On September 15, 2025, President Boyd sent an email to all Board members attaching his standardized email response and a social media post and stated the following:

> Dear Trustees,
> Please see the below responses to the social media post from yesterday. If you haven't seen it, text me and I'll send you a copy. We are in a firestorm ever since.

We are discussing faculty hand book, board policy, and legal ramifications. I'd welcome a call if you'd like to discuss more.

[Compton Dep. Ex. 109, attached hereto as Exhibit A].[3]

This email, notably, made no mention of suspending or terminating Plaintiff. President Boyd, who sent the email, testified that no board member ever called him about the matter. [Boyd Dep.[4] 43:17 to 50:13]. Receipt of this notification email was the full extent of the Board's involvement in this matter.

Merely receiving a communication from President Boyd about a University "firestorm" does not remotely rise to the level of "active unconstitutional behavior." Plaintiff does not, and cannot allege, that Chairman Compton took any action to encourage or discourage Plowman to terminate Plaintiff, nor did Chairman Compton directly participate in the decision. He was informed by the President of a "firestorm," nothing more. He never spoke to Chancellor Plowman about her decision. [Plowman Dep.[5] 124:7-22].

Chairman Compton testified repeatedly during his deposition in this case[6] that it was not the Board's responsibility to interfere with a campus decision made by the Chancellor:

Q: So the board defers to the Chancellor?
A: We defer to the board policies.
Q: You defer to the board policies, and then it's the Chancellor who gets to interpret them?
A: On this particular example, the Chancellor – as it relates to who we hire and fire at a faculty level, that ultimately resides with the Chancellor.

[Compton Dep. 39:3-10]. Further, Chairman Compton testified:

Q: Did the board of trustees have the power to suspend any disciplinary action taken against Dr. Shirinian?

---

[3] Plaintiff claims to have text messages between Plowman and Boyd demonstrating "external political, donor, and the public pressure." [Doc. 58-1, Proposed Am. Compl. ¶ 39]. The proposed complaint states that these texts are attached as "Exhibit B," but neither this exhibit nor any exhibit cited in the proposed complaint was attached.

[4] See Doc. 46 for deposition of Randy Boyd.

[5] See Doc. 45 for deposition of Donde Plowman.

[6] Chairman Compton was deposed in this case on February 4, 2026, prior to Plaintiff's filing her first motion to amend her complaint.

A: No. Because the board policy is, again, the – ultimately the Chancellor's the decision making for the campuses, and – and that Chancellor has the authority to make decisions.

Q: So whatever the Chancellor says goes when it comes to decisions made by the Chancellor?

A: As it relates to faculty. As it relates to this question, that certainly was in the Chancellor's realm of responsibility.

Q: When is it not within the Chancellor's realm of responsibility?

A: I think it is within the Chancellor's realm of responsibility.

Q: Always?

A: Yes. According to the board policy, yes.

[Compton Dep. 48:11 to 49:4].

President Boyd's deposition testimony[7] aligns with Chairman Compton's testimony:

A: I'll say – and as a policy, the board doesn't get involved in personnel matters. We have 14,000 employees, and they don't weigh in on personnel matters.

Q: When did [Chairman Compton] share that with you.

A: It's a general rule.

Q: What role does the board have, if any, in personnel matters?

A: They hire and fire the president. Then I'm responsible for everything else.

[Boyd Dep. 223:22 to 224:7].

President Boyd testified about how the University's chain of command operates:

I would support the Chancellor, and then the – the board would support me. The – the governor and the – the state could fire all of the board members, as they've done before, and – and change the decision. But unless something drastically like that happens, *the Chancellor will make the final decision*.

[Boyd Dep. 227:4-10 (emphasis supplied)].

This testimony is consistent with the statutory authority given to the Board by the

Tennessee General Assembly, which states that the Board shall:

Exercise general control and oversight of the University of Tennessee system and its institutions, delegating to the president the executive management and administrative authority necessary and appropriate for the efficient administration of the system or necessary to carry out the mission of the system, and *delegating to each chancellor the executive management and administrative authority necessary and appropriate for the efficient administration of such chancellor's institution and*

---

[7] President Boyd was deposed in this case on January 9, 2026. [See Doc 46].

7

> *its programs, subject to the general supervision of the president.* The president shall exercise administrative authority over the chancellors.

Tenn. Code Ann. § 49-9-208(d)(1)(P) (emphasis supplied).

Thus, neither the Board nor Chairman Compton had any statutory authority or obligation to interfere with Chancellor Plowman's employment decisions—the President has "administrative authority" over the chancellors. At most, the Board merely delegated to Chancellor Plowman the authority necessary for the efficient administration of UTK, in accordance with state law. Plaintiff does not and cannot allege any "active unconstitutional behavior" by Chairman Compton or the Board, whose members did nothing but receive a notification email from President Boyd about a "firestorm." Chairman Compton took no action to encourage, condone, authorize, approve, or knowingly acquiesce in the Chancellor's decision. He took no action whatsoever, and inaction is ***clearly*** insufficient to impute individual liability to him. Alleging a mere failure to act, without more, is insufficient to state a claim of supervisory liability. *Does v. Whitmer*, 69 F.4th 300, 307 (6th Cir. 2023); *see also Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) ("[S]upervisory liability also has sharp limits. It will not attach for "a mere failure to act.") ("[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional right of another."); *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 866 (6th Cir. 2020) ("[I]t is not enough for the plaintiff to show that the defendant supervisors were sloppy, reckless or negligent in the performance of their duties.").

The inaction of Chairman Compton, in deference to Chancellor Plowman's authority over campus personnel matters, is insufficient to impute supervisory liability under § 1983 to Chairman Compton. This is not enough to state a claim upon which relief can be granted; thus, all claims against him would be subject to dismissal under Rule 12(b)(6) and adding him as a party defendant

to this lawsuit would be futile.  Therefore, Plaintiff's motion to amend to add Chairman Compton as a defendant in this case should be denied.

### A. PLAINTIFF'S ATTEMPT TO ADD COUNSEL AS DEFENDANTS IS POINTLESS GRANDSTANDING; THEY HAD NO DUTY TO INTERVENE IN CHANCELLOR PLOWMAN'S DECISION.

Plaintiff seeks to add Ryan Stinnett, General Counsel of the University, and Cynthia Moore, counsel to the Board,[8] as Defendants in their individual capacity.  Both Mr. Stinnett and Ms. Moore serve in advisory capacities, but neither is in the chain of command of Chancellor Plowman, the decision-maker in this case.

No case decision Defendants could find imposes liability on employees who merely advise the decision-maker.  The Sixth Circuit has held that mere inaction by non-decision-makers is insufficient to impute section 1983 liability because their failure to act is not a substantial factor in the plaintiff's underlying constitutional injury.  *See, e.g., Fritz v. Charter Twp. of Comstock*, 463 F. App'x 493, 500 (6th Cir. 2012) (finding no liability under § 1983 for a defendant who "was not in a position to terminate Plaintiff . . . and lacked authority to take adverse action against her"); *Poppy v. City of Willoughby Hills*, 96 F. App'x 292, 294-95 (6th Cir. 2004) ("Because [defendant] was not the decisionmaker, he cannot be held liable under § 1983 for the City Council's decisions regarding [the plaintiff's] terms and conditions of employment."); *Smith v. Campbell*,  250 F.3d 1032, 1038 (6th Cir. 2001) (dismissing a First Amendment retaliation claim against a non-decision-maker because no "causal connection" existed between the filing of a grievance against that defendant and the subsequent "retaliation" that formed the basis for the plaintiff's claim); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998) (in order for liability to attach to non-decision-makers, "Plaintiff had to prove that they did more than play a passive role in the

---

[8] Ms. Moore serves as both Special Counsel to the Board of Trustees and Secretary of the Board.  [Doc. 58-1, ¶ 53]. Thus, her role must be analyzed both as a staff liaison to the Board and as an attorney for the Board.

alleged violation or showed mere tacit approval of the events. Liability under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence. Plaintiff must show that [non-decision-makers] otherwise encouraged or condoned the actions of the other Defendants.").

Of course, Plaintiff does not allege any misconduct by Mr. Stinnett or Ms. Moore. Instead, Plaintiff bases liability on Mr. Stinnett's and Ms. Moore's (unknown) legal advice and failure to intervene in their clients' actions. The Proposed Complaint includes no facts that allege Mr. Stinnett or Ms. Moore had any active participation in the decision. Indeed, the lawyer's role is not that of a decision maker, and Plaintiff's Amended Complaint contains no allegations that either Mr. Stinnett or Ms. Moore took any decision-making action. Plaintiff does not and cannot know the substance of any privileged conversations between Mr. Stinnett or Ms. Moore and University's officials, and any discovery into Mr. Stinnett's or Ms. Moore's legal advice would be barred by the attorney-client privilege.

Perhaps because the theory is so outrageous, cases are scant where parties have attempted to include attorneys as section 1983 defendants. In *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 316-17 (W.D.N.Y. 2014), a plaintiff named an in-house attorney based on the attorney's failure to act to prevent a constitutional violation. The court dismissed the claim under Rule 12(b)(6), finding that the attorney's role as legal advisor to the defendants was insufficient to establish liability. As the court stated,

> Although an attorney should not be permitted to use his or her legal role as a shield behind which to engage in misconduct with impunity, permitting a cause of action to survive based on vague speculation regarding improper legal advice would invite both interference with the attorney-client relationship and vexatious litigation.

*Id*. at 317; *see also Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 367 (N.D.N.Y. 2014) ("Where the allegations in the complaint show that counsel was not acting beyond the scope of his

employment, by either placing his own interests or those of another before the interests or instructions of the client, even erroneous advice will not expose counsel to liability to the third party.").[9] And no cases impose liability on an attorney based on a "specialized role" to step in and prevent any alleged unconstitutional actions by any person.

Much like the proposed claims in *Barsoumian*, Plaintiff's putative claims against Mr. Stinnett and Ms. Moore are solely based on "vague speculation regarding improper legal advice." *Barsoumian*, 29 F. Supp. 3d at 317. Legal advice from Mr. Stinnett and Ms. Moore is protected by the attorney-client privilege and adding them to this lawsuit would not merely invite "interference with the attorney-client relationship," it would create a pointless sideshow of privilege objections and counter-objections. The Proposed Complaint contains no allegations that Mr. Stinnett or Ms. Moore owed Plaintiff a duty to intervene or that they breached any legal duty to her whatsoever. The allegations against them would not survive a motion to dismiss under Rule 12(b)(6), and so Plaintiff's motion to add them should be denied as futile.

## II. PLAINTIFF'S ATTEMPT TO ADD A CLAIM FOR DEPRIVATION OF PROCEDURAL DUE PROCESS IS FUTILE BECAUSE PLAINTIFF HAS NOT PLEADED ANY FACTS SHOWING THAT SHE DID NOT RECEIVE CONSTITUTIONALLY SUFFICIENT PROCESS.

Plaintiff now seeks to add a claim that she was deprived of her procedural due process rights under the Fourteenth Amendment. She asserts this claim against the current Defendants and against putative defendants Moore, Stinnett and Compton. [Doc. 58-1, ¶¶ 254-263].

---

[9] Other courts under similar circumstances have found that government attorneys performing "traditional functions of counsel" do not act under "color of law" for § 1983 purposes. *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981) (holding that a public defender does not act under color of state law when performing a lawyer's traditional functions of counsel to a defendant in a criminal proceeding"); *Willhite v. Arrants*, No. 3:23-cv-TAV-JEM, 2023 WL 11915398, at *2 (E.D. Tenn. Aug. 8, 2023) (same); *Mincy v. Luzerne Cnty., Penn.*, No. 3:12-cv-00608, 2015 WL 13203062, at *4 (M.D. Pa. Jan. 15, 2015) (including in these "traditional functions of an attorney" for which an attorney cannot be acting under color of law "rendering advice, drafting correspondence on behalf of a client as to legal disputes, or otherwise engaging in litigation and equivalent legal activities") (cleaned up).

11

Defendants concede that Plaintiff has, at a minimum, a property interest in her employment with the University. However, Plaintiff's procedural due process claim under the Fourteenth Amendment is futile because she received notice and an opportunity to be heard, which is all the process the Constitution requires.

Plaintiff does not specify in her complaint the process she believes she was due, but she appears to be complaining that Chancellor Plowman did not follow a process outlined in either a Board policy or a Faculty Handbook. [Doc. 58-1, ¶ 167]. To the extent her claim is that Chancellor Plowman did not follow an internal policy regarding her suspension or termination, that does not create a constitutional claim. "Violation of a state's formal procedure . . . does not in and of itself implicate constitutional due process concerns.'" *JiQiang Xu v. Mich. State Univ.*, 195 F. App'x 452, 457 (6th Cir. 2006) (quoting *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996) (citation omitted)). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Id.* (citations omitted); *see also Anderson v. Ohio State Univ.*, 26 F. App'x 412, 414 (6th Cir. 2001) (allegation that university failed to follow its own rules and procedures does "not establish a cognizable constitutional violation."); *Lauve v. Winfrey*, 852 F. App'x 184, 186 (6th Cir. 2021) ("It is a long-established principle 'that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.'"); *Bates v. Sponberg*, 547 F.2d 325, 331 (6th Cir. 1976) ("Since 42 U.S.C. § 1983 offers relief only to those persons whose federal statutory or federal constitutional rights have been violated, we conclude that the mere departure from the university regulations, standing alone, did not deprive Bates of any right which can be asserted in this court.").

12

The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Purisch*, 76 F.3d at 1423 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id*. at 1424 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). The Proposed Complaint actually pleads facts that show that Plaintiff has, in fact, received constitutionally sufficient process. Chancellor Plowman sent Plaintiff an immediate notification that Plaintiff was placed on paid administrative leave. [Am. Compl. [Doc. 25], Ex. 1]. The following day, Chancellor Plowman provided Plaintiff with full notice of the grounds for her decision. [Am. Compl. [Doc. 25], Ex. 2]. Plaintiff responded to Chancellor Plowman's letter, and Chancellor Plowman provided her with an opportunity to respond during a one-on-one meeting. This process satisfies constitutional due process requirements. [Am. Compl. [Doc. 25], Ex. 3].

Plaintiff complains that she was entitled to a neutral decision-maker prior to her suspension, but, under well-established case law, she was not. "[I]n the pretermination stage, the employee does not have a right to, and the Constitution does not require, a neutral and impartial decisionmaker. The 'right of reply' before the official responsible for the discharge is sufficient." *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004). "It is at the post-deprivation stage where a neutral decisionmaker is needed to adjudicate the evidence. Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the employee has received all the process due under the Constitution." *Id*. Plaintiff has already availed herself of the post-termination process by requesting a contested case hearing under the Tennessee Uniform Administrative Procedures Act.

13

*Farhat* is squarely on point: the process provided to Plaintiff—and as fully laid out by Plaintiff in her Proposed Complaint and her First Amended Complaint—fully satisfies the requirements of the Constitution, thus amending her complaint to add a section 1983 due process claim is futile.

## III.  PLAINTIFF'S DEFAMATION CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.  Plaintiff's claims against putative Defendants Stinnett and Moore fail because Plaintiff cannot establish publication by either person.

Plaintiff states defamation claims against Defendants Plowman and Boyd and also against putative Defendants Stinnett and Moore.  Her defamation claims against Stinnett and Moore would be subject to immediate dismissal because Plaintiff identifies no publication by either Stinnett or Moore of any statement—defamatory or not—about Plaintiff.

To establish a *prima facie* case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999). "Publication" is a term of art meaning the communication of defamatory matter to a third person.  *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994).

Plaintiff does not allege that either Stinnett or Moore published any statement about her, much less a defamatory statement.  Instead, she seems to allege that they are vicariously liable for statements made by others because they "either authored, materially assisted in drafting, approved, authorized, ratified or caused" publication of the statements.  [Doc 58-1, ¶ 282].  Even if that were true, she does not allege that either Stinnett or Moore published anything.  Publication is an "essential element of a defamation action in Tennessee." *Sullivan*, 995 S.W.2d at 570.  Plaintiff

14

makes no allegation that would satisfy this essential element. Plaintiff's inclusion of Stinnett and Moore in this lawsuit is simply for annoyance and harassment. She cannot state a claim against them for defamation, and amending her complaint to assert such a claim would be futile.

**B.** **Plaintiff cannot state a claim against Plowman or Boyd for defamation because they did not publish any statement about her that was false and defamatory.**

Plaintiff asserts claims of defamation against Chancellor Plowman and President Boyd. To properly frame this claim, the Court must start at the origin of this dispute: Plaintiff's social media comment that said:



On Monday, September 15, 2025, President Boyd published two social media comments. The first said:

Case 3:25-cv-00528-KAC-JEM    Document 61    Filed 04/10/26    Page 15 of 21
PageID #: 2367

> Celebrating or advocating violence and murder is reprehensible and has no place at the University of Tennessee. UT Knoxville is actively investigating the matter and will take decisive action to ensure it is addressed with the full weight and attention it deserves.

The second said:

> I support Chancellor Plowman's swift action. Our responsibility is to educate and shape future leaders in an environment grounded in respect and decency. That responsibility is one we will always uphold on behalf of our students and the people of Tennessee.

A campus statement, which Plaintiff attributes to Chancellor Plowman, stated:

> The university has taken swift action against a faculty member who has failed to meet our expectations for civil engagement. Her actions endorsing violence and murder do not represent the university or our values.
> The faculty member is out of the classroom, placed on administrative leave, and termination proceedings have begun.
> Teaching and shaping the lives of young people is core to the mission of the University of Tennessee, Knoxville. We have a great responsibility as educators of America's future leaders to make sure students have a healthy educational environment in which to learn, wrestle with difficult issues, and express themselves civilly. We take that responsibility seriously.

Plaintiff now asserts that these statements defamed her. This assertion is not true, and the reason is obvious: these words are not false. As the Tennessee Court of Appeals has explained,

> For the Defendants to be liable for defamation, "there must be publication of matter that is both defamatory and false." W. Page Keeton, *Prosser and Keeton on Torts* § 116, p. 839. Thus, it is not enough for the statement in question to be false; the plaintiff must show that the defendant made a false statement that defamed him. *See Farmer v. Hersh*, No. W2006–01937–COA–R3–CV, 2007 WL 2264435, at *5 (Tenn. Ct. App. Aug. 9, 2007). "[T]he basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn.Ct.App.2001). This Court has adopted Prosser's description of a statement that is defamatory:
>
> > For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be

16

> construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element "of disgrace."

*Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012) (citations omitted).

Plaintiff, whose own words speak for themselves, now wants to turn the tables and cast herself as the one who is disgraced. Her incurable problem is that nothing in the words of President Boyd or the University were false and defamatory. They were, at worst, statements of opinion about Plaintiff's incendiary post. In Tennessee, true statements, statements of opinion, and privileged statements are not defamatory. *Whiting v. City of Athens, Tennessee*, No. 24-5918, 2026 WL 710025, at *5 (6th Cir. Mar. 13, 2026) (citing *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013)); *see also West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 645 (Tenn. 2001) ("In defamation law only statements that are false are actionable, truth is, almost universally, a defense."). "[T]he burden to show the falsity of a statement is on the party asserting the defamation claim." *Garner v. Hendrix, Harvey, Johnson & Mitchell, PLLC*, No. W2022-01636-COA-R3-CV, 2024 WL 1618897, at *10 (Tenn. Ct. App. Apr. 15, 2024) (citing *Wagner v. Fleming*, 139 S.W.3d 295, 302 (Tenn. Ct. App. 2004)). In other words, "[a]s an essential element of a cause of action for defamation, the plaintiffs must prove a false and defamatory statement concerning another." *Patriot Angels Consulting Corp. v. Veterans of Foreign Wars*, No. 3:24-CV-00087, 2026 WL 625680, at *11 (M.D. Tenn. Mar. 5, 2026).

Statements that cannot "reasonably [be] interpreted as stating actual facts about an individual" because they are expressed in "loose, figurative or hyperbolic language," and/or the content and tenor of the statements "negate the impression that the author seriously is maintaining an assertion of actual fact" about the plaintiff are not provably false and, as such, will not provide a legal basis for defamation. *Hibdon v. Grabowski*, 195 S.W.3d 48, 63 (Tenn. Ct. App. 2005) (quoting *Milkovich v. Lorain Journal*, 497 U.S. 1, 21 (1990)).

17

The U.S. Supreme Court has clarified that rhetorical hyperbole cannot be the basis of a defamation claim. *See Greenbelt Coop. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (finding that the challenged statement could not be defamatory because "even the most careless reader must have perceived that the word [blackmail] was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable."); *Jolliff v. N.L.R.B.*, 513 F.3d 600, 610 (6th Cir. 2008) ("The Court further affirmed that 'rhetorical hyperbole, a vigorous epithet' and 'loose, figurative, or hyperbolic language' merit protection.") (citing *Milkovich*, 497 U.S. at 20). Tennessee courts have gone a step further, indicating that "[m]ere hyperbole or exaggerated statements intended to make a point *are not actionable defamatory statement*s." *Moses v. Roland*, No. W2019-00902-COA-R3-CV, 2021 WL 1140273, at *11 (Tenn. Ct. App. Mar. 25, 2021) (emphasis added) (quoting *Farmer v. Hersh*, No. W2006-01937-COA-R3-CV, 2007 WL 2264435, at *5 (Tenn. Ct. App. Aug. 9, 2007) (citation omitted)).

The statements that Plaintiff claim to be defamatory are exaggerated only slightly, if at all. President Boyd's statement that implied Plaintiff "celebrated" and "advocated" violence is nothing more than strong statements of opinion that were intended to make a point. His statements are not false, and they are not defamatory. Moreover, at the time of these statements, Plaintiff had created so much "public hatred, contempt or ridicule" for herself that she was virtually "libel-proof." See *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) ("To suffer injury to one's standing in the community, or damage to one's public reputation, one must possess good standing and reputation for good character to begin with.").

Plaintiff's claim of defamation is mere gamesmanship, particularly given that she seeks to add it months into this litigation and after all parties have been deposed. This claim would not survive a 12(b)(6) motion, and therefore amending her complaint to add it would be futile.

18

**IV. PLAINTIFF'S DEFAMATION *PER SE* CLAIMS ARE SUBJECT TO DISMISSAL BECAUSE NO SUCH CLAIM EXISTS UNDER TENNESSEE LAW.**

Plaintiff asserts claims for defamation *per se* against Defendants Boyd and Plowman and against putative Defendants Stinnett and Moore. These claims are all subject to immediate dismissal because a claim for defamation *per se* has not existed in Tennessee since 1978. *See Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978) ("The plaintiff must plead and prove injury from the alleged defamatory words, whether their defamatory meaning be obvious or not."); *see also Steele v. Ritz*, No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *1 n.2 (Dec. 16, 2009) ("We agree that the distinction between defamation *per se* and defamation *per quod* is no longer viable.").

**V. PLAINTIFF CANNOT STATE A CLAIM FOR FALSE LIGHT INVASION OF PRIVACY.**

Plaintiff asserts a claim for false light invasion of privacy against Boyd, Plowman, Stinnett and Moore, again trying to cast herself as the victim in this incident and not the originator.

The Tennessee Supreme Court has adopted the following definition of the tort of false light invasion of privacy:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 644 (Tenn. 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 652E (1977)). Here, the words uttered by Plaintiff herself were stratospherically more offensive to a reasonable person than any subsequent communication from the Defendants. Plaintiff's claim that she did not "celebrate" or "endorse"

19

murder is a matter of interpretation, not truth or falsity. Plaintiff is asking the Court to impose liability based upon word play: while her comment did not contain the words "celebrate or endorse," her posted comment clearly conveyed those exact sentiments. Certainly, no statement by the Defendants was clearly false. She cannot plausibly maintain that she was cast in a false light by the Defendants' statements after she had already herself published words that are highly offensive to a reasonable person. Plaintiff can establish neither of the elements necessary to establish a claim for false light invasion of privacy and, therefore, amending her complaint to add this claim would be futile.

## VI.    PLAINTIFF'S BUSINESS TORTS ARE FUTILE.

Plaintiff asserts two Tennessee torts—tortious interference with business relationship and inducement of breach of contract—against U.S. Representative Tim Burchett, Tennessee State Representative Chris Todd, and an unnamed donor who claimed in an email that their family's trust is set to make a testamentary gift of $10 million to UTK's Tickle College of Engineering.

Plowman has testified that neither she nor any member of her team spoke with Rep. Burchett about this matter. [Plowman Dep. 30:8-19]. Rep. Todd's only connection is an email he sent to Carey Whitworth, the University's Vice President of Government Relations, Advocacy, and Economic Development. [Exhibit B]. The unnamed donor did not threaten to withhold their family's testamentary gift; they only expressed dismay that UT employed someone with "such a hateful point of view." [Exhibit C]. None of these actions supports the claims asserted by Plaintiff and, therefore, adding them to this lawsuit would be futile.

20

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court enter an Order denying Plaintiff's Motion for Leave to File a Second Amended Complaint, and this lawsuit should proceed with her First Amended Complaint being the operative pleading.

Respectfully submitted this 10th day of April, 2026.

**THE UNIVERSITY OF TENNESSEE**

*s/ Michael D. Fitzgerald*
Michael D. Fitzgerald (BPR # 20079)
T. Mitchell Panter (BPR #031744)
505 Summer Place, UTT#1155
Knoxville, TN 37902
(865) 974-9321
mike.fitzgerald@tennessee.edu
mitchell.panter@tennessee.edu

*Attorneys for Defendants*

21