**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **TAMAR SHIRINIAN** | ) | |
| | ) | |
| ***Plaintiff,*** | ) | **Civil Action No. 3:25-cv-528-KAC-JEM** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Crytzer** |
| **DONDE PLOWMAN, et al.** | ) | **Magistrate Judge McCook** |
| **in their personal and official capacities** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| ***Defendants.*** | ) | |

---

**PLAINTIFF'S MOTION TO COMPEL**

---

**INTRODUCTION**

As this Court recently ruled:

> The discovery rules exist to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958) (citation omitted).

*Collins v. Claiborne Cnty.,* 2026 U.S. Dist. LEXIS 9550, *5.

Federal Rule of Civil Procedure 26(b)(1) permits discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The Sixth Circuit emphasizes that relevance at the discovery stage is broad. *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998) (discovery is broader that what is permitted at trial and includes anything "reasonably calculated to lead to the discovery of admissible evidence").

The two discovery disputes before this Court go directly to the important issues of why Defendants suspended Plaintiff in September of 2025 and terminated her in February of 2026:

1. Defendants' refusal to disclose the identity of a donor who threatened to withhold more than ten million dollars ($10,000,000.00) if Plaintiff remained employed; and
2. Defendants' sweeping and unsupported assertion of "attorney-client privilege" over communications that almost exclusively involve individuals in the Communications, Marketing and Government Relations Departments, as well as marketing/PR/business issues.

Plaintiff certifies that she has made a good faith effort to resolve this discovery dispute. See attached Meet and Confer emails attached as Collective Exhibit 1, Plaintiff's Position Statement Submitted to Judge McCook as Exhibit 2, and Defendant's Position Statement Submitted as Exhibit 3.

## ARGUMENT

### I. THE DONOR IDENTITY AND COMMUNICATIONS ARE DISCOVERABLE

In their initial Meet and Confer emails, **Defendants labeled producing an unredacted version this very document as "fair game."** See March 12, 2026, email from Mike Fitzgerald, Esq., attached to Plaintiff's Position Statement. Defendants then completely changed course and advanced via the very blind man's bluff route that this Court explicitly does not allow.

The identity of a third-party donor is not privileged under any doctrine. As shown in the meet and confer correspondence, Defendants initially made four separate arguments, all of which are not supported by the law.

First, Defendants argued that they do not know if the donor is "real" or if he/she really planned to withdraw the funds if they did not get their way. This is, of course, precisely why the donor's identity must be disclosed. Moreover, whether the donor *actually* planned on executing the threat is not the issue, but if a defendant would reasonably act based on such threats.

Second, Defendants claimed that the timing of the threat makes it irrelevant. In doing so, however, they ignore that Constitutional violations and obligations continued *and still continue*,

that Plaintiff was only terminated in February of 2026 (with numerous months between paid suspension and termination), and that external financial pressure anywhere along that continuum is discoverable and probative.

Third, though it is not a relevant ground for non-production, Defendants contended that Plaintiff did not adequately examine witnesses about the document.

Fourth, Defendants conditioned disclosure on the donor becoming an actual Defendant. However, this inverts the rules, as Plaintiff is entitled to facts necessary to determine whom to name—not the other way around.

Defendants then decided to both drop many of those arguments and add new arguments in their Position Statement, including relying on state law and claiming that Plaintiff is somehow trying to embarrass the donor.

All these arguments fail.

**A. The Donor Evidence is Directly Relevant to Motive**

The donor email is classic viewpoint discrimination and heckler's veto evidence—i.e., government action taken because of pressure from listeners offended by protected speech. As such, the donor's identity is not peripheral—it is direct evidence of motive. Courts consistently hold that evidence of third-party pressure is highly probative of unconstitutional motive. See *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 252–53 (6th Cir. 2015) (en banc) (government may not silence speech in response to hostile audience reaction); *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134–35 (1992) (listeners' reaction cannot dictate government action). This case turns on why Defendants acted and donor communication is not tangential—it is direct evidence of external pressure, financial leverage, and institutional response. Evidence bearing on motive is discoverable.

**B. Defendants Cannot Use External Pressure as a Sword While Withholding Its Evidence**

Defendants use the alleged donor threat as both a sword and a shield. The identity of the donor is essential to: 1) assess the credibility and seriousness of the threat, 2) determine Defendants' reliance on the threat, 3) evaluate causation and pretext, and, 4) explore motive. Without the identity, Defendants effectively shield one of the most probative pieces of evidence of unconstitutional motive and simultaneously rely on a safety concern argument while preventing Plaintiff from testing whether the concern was real, credible, or pretextual.

**C. The Timing Argument Does Not Defeat Relevance**

Defendants argue that the donor email post-dated certain decisions. But relevance does not turn on a single timestamp. The inquiry is whether external pressure existed and was part of the decision-making environment. The record reflects a rapidly developing situation involving political, public, and donor input. Moreover, ***Plaintiff was only recently terminated***. The donor communication is part of that continuum.

**D. Plaintiff Formally Requested the Information**

In Defendants' Position Statement submitted to the Court (attached as <u>Exhibit 3,</u> at 1), Defendants claimed that "Plaintiff has never properly requested the document." Aside from the fact that the document in question should not have been redacted in the 3,000+ page Initial Disclosure document dump, Plaintiff separately and properly request the document. Defendants simply do not want to respond to straightforward, relevant requests.

On April 20, 2026, Defendant Plowman "Responded" to Plaintiff's First Request for Production of Documents. <u>See</u> Plowman Response, attached as <u>Exhibit 4</u>. Astonishingly, Defendant Plowman objected to all 37 requests via stock objections and produced no documents

other than a Court Reporter's transcript of her meeting with Plaintiff on February 4 and a post she made on X that was recently discovered by Plaintiff and not included in Defendants' Initial Disclosures. The Position Statement Defendant Plowman submitted failed to note that Plaintiff's Request No. 10 specifically requests production of all documents reflecting any communications with any donor relating to Plaintiff and Request No. 11 requests all documents reflecting any concern regarding potential loss of donations, funding or financial support relating to Plaintiff.[1] See id.

**E. State law Does Not Bar Federal Discovery**

Defendants also rely on Tennessee's Public Records Act. However, the documents produced as were not in response to a TPRA request by the Plaintiff (as there has been no such request), but via Defendants' 3,000+ page initial disclosures dump in this matter.

**F. The Information Is Relevant, Proportional and Easily Produced**

Despite Defendants' arguments about Plaintiff's "true motives"---that Plaintiff is seeking this information for harassment purposes---a third-party threatening to withhold ten million dollars if Dr. Shirinian remained a professor is certainly discoverable and relevant to claims and defenses in this matter. Seeking information about this and other donors is not harassing. **Individuals who made threats with regards to the career of Dr. Shirinian purposefully injected themselves and the power of their checkbooks to take control of her life and career.** Moreover, the burden of production is nonexistent, Defendants already know the donor's identity, and there is no

[1] Plaintiff recently already sent a Meet and Confer letter to Defendants, attached as Exhibit 5. For purposes of this Motion, however, Plaintiff formally requested information regarding this donor and other donors. Defendant Plowman's complete failure to adequately respond to discovery will, sadly, likely be the topic of yet another Motion to Compel as Defendants continue their game of blind man's bluff and continued delay.

alternative source to discover it. The only "burden" is disclosure. Under Rule 26(b)(1), this is the paradigm case of proportional discovery.

## II. DEFENDANTS' PRIVILEGE ASSERTIONS FAIL

The attorney–client privilege does not permit public officials to convert unconstitutional conduct into confidential conduct. Where legal counsel is embedded not to provide legal advice, but to facilitate, structure, or shield viewpoint-based discipline driven by political and donor pressure, the privilege does not apply. Courts uniformly reject attempts to cloak business, public-relations, or crisis-management communications in privilege—particularly where, as here, the communications themselves are the mechanism of the constitutional violation.

Defendants' privilege assertion fails for a fundamental reason: They admit that the communications were part of a "legal, political, business, and public relations nightmare." Exhibit 3 at 4. That admission is dispositive. Where communications serve mixed purposes, the privilege applied only if the *primary purpose* is to obtain legal advice. *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp. (in Re Columbia/Hca Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289, 294 (6th Cir. 2002).

In *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp. (in Re Columbia/Hca Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289, 294, the Sixth Circuit held:

> Claims of attorney-client privilege are "narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit." *Collis*, 128 F.3d at 320 (citing *In re Grand Jury Proceedings*, 78 F.3d at 254). The privilege "**applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice**." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 1577, 48 L. Ed. 2d 39 (1975)).

(emphasis added).

Here, Defendant Boyd, *whom Defendants claim was not even a decision maker*, made a significant social media post about the Plaintiff in the early morning of September 15, 2025. Defendant Plowman, *whom Defendants contend was the sole decision maker* (as if the social media post of her boss, the President, really didn't matter to her), then came out with a nearly identical public statement and sent a decision suspending Plaintiff only hours later. Defendants openly admit that the "firestorm" to which President Boyd reacted was ***due to the media***, yet claim ***legal advice privilege*** over political, business, media, and public relations issues.

**A. The Privilege Applies Only to Legal Advice—Not to the Business, Social Media, or PR Strategy to Which Defendants Admit**

President Boyd, Chancellor Plowman, UT's marketing and communications department, the legislative relations group, and others, *with the aid of attorneys*, helped make statements on social media that Dr. Shirinian had "advocated for" or "endorsed" violence and murder. Lawyers helping administrators and the PR/marketing/media department with social media posts is not legal advice, neither is lawyers helping Chancellor Plowman draft a letter to Dr. Shirinian skirting due process and explaining both non-legal and illegal reasons that she was going to be suspended and, later, terminated. **In fact, Defendants do not claim that they were even concerned with First Amendment legal implications. To the contrary, they maintained positions that openly strike directly against the First Amendment.**

Moreover, communications sent to large distribution lists of individuals in marketing and government relations departments scream PR/business advice, not legal advice. In fact, dozens and dozens of times, Defendants' own privilege log reveals the true nature of the PR/business communications. It repeatedly, explicitly describes: "Draft Response" "Social Media Posts" "Draft Statement – 1st Review" or "Media Statement."

This is quintessential media strategy, public relations and business communications, not legal advice. See *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981) (privilege applies only where the primary purpose is legal advice); *In re Kellogg Brown & Root, Inc*., 756 F.3d 754, 759–60 (D.C. Cir. 2014) (legal advice must be a *primary purpose*—not incidental); *United States v. Roxworthy*, 457 F.3d 590, 593–94 (6th Cir. 2006) (same). While administrators would sometimes copy attorneys on emails and use language such as "copying GC for privilege purposes," a party cannot conceal a fact merely by revealing it to a lawyer. See *Upjohn*, *supra*, at 396.

**C. The Log Is Independently Deficient Under Rule 26(b)(5)**

Even if privilege could apply (it cannot), Defendants' log is facially inadequate. Rule 26(b)(5)(A) requires description sufficient to assess the claim and identification of the basis for privilege. Defendants' log fails because it repeats vague labels ("Draft," "Social Media Posts"), fails to identify any specific legal issue, fails to distinguish legal vs. business advice, and uses boilerplate assertions ("AC," "Seeking LA").

**D. Defendants' Conduct Confirms These Were Not Legal Decisions**

The broader record reinforces the absence of legal advice. Decisionmakers admitted under oath that they were responding to donors, politicians, and reputational concerns—not legal analysis. Communications to, from and copying lawyers were routed broadly among communications staff, marketing staff, non-decision makers, and non-lawyers. This is inconsistent with confidential legal advice.

Defendants' position would allow any public institution to cloak political, donor, and media-driven decision-making in privilege simply by copying counsel. That is not and has never been the law.

## CONCLUSION

Plaintiff respectfully requests that the Court:

1. Compel immediate production of the unredacted donor email and donor identity;
2. Compel immediate production of all donor-related communications;
3. Compel immediate production of documents improperly withheld under assertions of privilege;
4. Alternatively, conduct in camera review of all alleged privileged documents; and
5. Award fees and costs under Rule 37(a)(5).

Respectfully Submitted,

/s/ Robert C. Bigelow, Esq.
Robert C. Bigelow, Esq. #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
(615) 829-8986
rbigelow@bigelowlegal.com

## CERTIFICATE OF GOOD FAITH

I hereby certify that Plaintiff attempted to resolve these issues prior to filing a Motion to Compel and acted in good faith.

/s/ Robert C. Bigelow
Robert C. Bigelow #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
rbigelow@bigelowlegal.com
(615) 829-8986

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, a copy of the foregoing was served on all counsel of record through the Court's CM/ECF system.

/s/ Robert C. Bigelow
Robert C. Bigelow #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
rbigelow@bigelowlegal.com
(615) 829-8986