**PLAINTIFF'S DISCOVERY POSITION STATEMENT**
**IN SHIRINIAN v. PLOWMAN, et al.**
3:25-cv-528-KAC-JEM

## INTRODUCTION

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Sixth Circuit emphasizes that relevance at the discovery stage is broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (discovery is broader that what is permitted at trial and includes anything "reasonably calculated to lead to the discovery of admissible evidence"). The information need not be admissible to be discoverable.

As Judge Crytzer recently ruled:

> The discovery rules exist to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958) (citation omitted).

*Collins v. Claiborne Cnty.*, 2026 U.S. Dist. LEXIS 9550, *5.

Two discovery disputes now go directly to the important issues of why Defendants suspended Plaintiff in September of 2025 and terminated her in February of 2026:

1. Defendants' refusal to disclose the identity of a donor who threatened to withhold more than ten million dollars ($10,000,000.00) if Plaintiff remained employed; and
2. Defendants' sweeping and unsupported assertion of "attorney-client privilege" over communications that almost exclusively involve individuals in the Communications, Marketing and Government Relations Departments, as well as marketing/PR/business issues.

## I. THE DONOR'S IDENTITY IS DISCOVERABLE AND CENTRAL TO PLAINTIFF'S CLAIMS

### A. The Donor's Identity Goes to the Heart of Motive

The donor email is classic viewpoint discrimination and heckler's veto evidence—i.e., government action taken because of pressure from listeners offended by protected speech. As such, the donor's identity is not peripheral—it is direct evidence of motive. Courts consistently hold that evidence of third-party pressure is highly probative of unconstitutional motive. See *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 252–53 (6th Cir. 2015) (en banc) (government may not silence speech in response to hostile audience reaction); *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134–35 (1992) (listeners' reaction cannot dictate government action).

Defendants are using the alleged donor threat as both a sword and a shield. The identity of the donor is essential to: 1) assessing the credibility and seriousness of the threat, 2) determining Defendants' reliance on the threat, 3) evaluating causation and pretext, and, 4) exploring motive. Without the identity, Defendants effectively shield one of the most probative pieces of evidence of unconstitutional motive and simultaneously rely on a safety concern argument while preventing Plaintiff from testing whether the concern was real, credible, or pretextual.

**B. Defendants Have No Cognizable Basis to Withhold the Donor's Identity**

**Defendants previously labeled producing an unredacted version this very document as "fair game."** See March 12, 2026, email from Mike Fitzgerald, Esq., attached to this Position Statement. Defendants have now completely changed course and advance via the very blind man's bluff route that this Court explicitly does not allow.

The identity of a third-party donor is not privileged under any doctrine. As shown in the meet and confer correspondence, Defendants make four separate claims, all of which are not supported by the law.

First, Defendants argue that they do not know if the donor is "real"[1] or if he/she really planned to withdraw the funds if they did not get their way. This is, of course, precisely why the donor's identity must be disclosed. Moreover, whether the donor *actually* planned on executing the threat is not the issue, but if Defendants would reasonably act based on such threats.

Second, Defendants claim that the timing of the threat makes it irrelevant. In doing so, however, they ignore that Constitutional violations and obligations continued (and still continue), that Plaintiff was only terminated in February of 2026, and that external financial pressure anywhere along that continuum is discoverable and probative.

Third, though it is not a relevant ground for non-production, Defendants contends that Plaintiff did not adequately examine witnesses about the document.

Fourth, Defendants condition disclosure on the donor becoming an actual Defendant. However, this inverts the rules, as Plaintiff is entitled to facts necessary to determine whom to name—not the other way around. Ultimately, this is not a close case under Rule 26.

**C. The Information Is Proportional and Easily Produced**

The burden is nonexistent. Defendants already know the donor's identity and there is no alternative source to discover it. The only "burden" is disclosure. Under Rule 26(b)(1), this is the paradigm case of proportional discovery.

[1] It is disingenuous for Defendants to claim that they don't know if a donor who threatened to withhold such a significant sum of money is "real."

## II. DEFENDANTS' PRIVILEGE CLAIMS ARE FACIALLY DEFICIENT AND LEGALLY UNSUPPORTABLE

As can be seen in the meet and confer documentation previously submitted, the Subpoena Duces Tecum requests limited, straight-forward, relevant information, and not privileged information. Defendants cannot hide it by claiming privilege.

### A. Defendants Bear the Burden—and Have Failed to Meet It

In *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp. (in Re Columbia/Hca Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289, 294, the Sixth Circuit held:

> Claims of attorney-client privilege are "narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit." *Collis*, 128 F.3d at 320 (citing *In re Grand Jury Proceedings*, 78 F.3d at 254). The privilege "**applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice.**" *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 1577, 48 L. Ed. 2d 39 (1975)).

(emphasis added). Here, Defendants have not met the Sixth Circuit burden.

### B. The Privilege Log Demonstrates Marketing, Communications, and Public Relations Coordination -- Not Legal Advice

President Boyd, Chancellor Plowman, UT's marketing and communications department, the legislative relations group, and others, *with the aid of attorneys*, helped make statements on social media that Dr. Shirinian had "advocated for" or "endorsed" violence and murder. Lawyers helping administrators and the PR/marketing/media department with social media posts is not legal advice, nor are lawyers helping Chancellor Plowman draft a letter to Dr. Shirinian explaining the non-legal reasons that she was going to be suspended and, later, terminated. In fact, at no point in their depositions did Defendants claim that they were even worried about First Amendment implications.

Moreover, communications sent to large distribution lists of individuals in marketing and government relations departments scream PR/business advice, not legal advice. In fact, Defendants' own privilege log reveals the true nature of the PR/business communications. It repeatedly describes: "Draft Response" "Social Media Posts" "Draft Statement – 1st Review" or "Media Statement."

**This is quintessential media strategy, public relations and business communications, <u>not legal advice</u>.** <u>See</u> *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981) (privilege applies only where the **primary purpose is legal advice**); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759–60 (D.C. Cir. 2014) (legal advice must be a primary purpose—not incidental); *United States v. Roxworthy*, 457 F.3d 590, 593–94 (6th Cir. 2006) (same). Moreover, while administrators

would sometimes copy attorneys on emails and use language such as "copying GC for privilege purposes," a party cannot conceal a fact merely by revealing it to a lawyer. See *Upjohn*, supra, at 396.

**C. The Log Is Independently Deficient Under Rule 26(b)(5)**

Even if privilege could apply (it cannot), Defendants' log is facially inadequate. Rule 26(b)(5)(A) requires description sufficient to assess the claim and identification of the basis for privilege. Defendants' log fails because it repeats vague labels ("Draft," "Social Media Posts"), fails to identify any specific legal issue, fails to distinguish legal vs. business advice, and uses boilerplate assertions ("AC," "Seeking LA").

**D. Defendants' Conduct Confirms These Were Not Legal Decisions**

The broader record reinforces the absence of legal advice. Decisionmakers admitted they were responding to donors, politicians, and reputational concerns—not legal analysis. Communications were routed broadly among communications staff, administrators, and non-lawyers, inconsistent with confidential legal advice.

Defendants' position would allow any public institution to cloak political, donor, and media-driven decision-making in privilege simply by copying counsel. That is not—and has never been—the law.

In conclusion, the Court should order the immediate production of the withheld documents. If the Court has any concern regarding privilege, the appropriate remedy is "attorneys' eyes only" or *in camera* review---both of which were offered to and declined by Defendants.[2]

Respectfully Submitted,

/s/ Robert C. Bigelow, Esq.

---

[2] While Plaintiff is not requesting an award of attorneys' fees, Defendants have exhibited a constant strategy of delay. To date, Defendants have:

1. Produced a wholly inadequate Answer to Plaintiff's Amended Complaint blanketly claiming that they "lack sufficient knowledge or information" for hundreds of paragraphs of factual allegations (Doc. 34),
2. Refused to produce discovery they admit is discoverable,
3. Requested a 90-day extension to respond to a Motion for Preliminary Injunction on a basis of having not deposed the Plaintiff, while ignoring Plaintiff's proposals to be immediately deposed,
4. Redacted a significant amount of relevant, non-privileged information,
5. Terminated Plaintiff only days after asking this Court for the extension of time to Response to Plaintiff's Motion for Preliminary Injunction.